660 So.2d 1228 (1995)
Kenneth L. DAVIS
v.
STATE of Mississippi.
No. 92-DP-00542-SCT.
Supreme Court of Mississippi.
June 8, 1995.
Rehearing Denied September 21, 1995.
*1233 Merrida Coxwell, Keyes Danks Coxwell & Leonard, William B. Kirksey, Kirksey & Associates, Andre de Gruy, Jackson, for appellant.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court:
Kenneth Leon Davis was indicted on April 10, 1989, in the Circuit Court for the First Judicial District of Hinds County, Mississippi, for the capital murder of Bobby Joe Biggert. Davis' capital murder trial commenced on March 11, 1991, in the First Judicial District of Hinds County. After hearing all of the testimony and viewing the evidence, the jury convicted Davis of capital murder. Following a sentencing hearing, the jury sentenced Davis to death. Thereafter, the trial judge ordered that Davis be executed by lethal injection. Davis duly perfected his appeal to this Court and assigns the following as error:

I.
THE SEARCH OF THE APPELLANT'S RESIDENCE WAS IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 23 OF THE MISSISSIPPI CONSTITUTION.

II.
THE PROSECUTION'S DISCRIMINATORY USE OF PEREMPTORY CHALLENGES VIOLATED THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.

III.
THE EIGHTH AMENDMENT'S REQUIREMENT OF CONSIDERATION OF MITIGATING CIRCUMSTANCES WAS REPEATEDLY DISREGARDED.
A. In violation of Morgan v. Illinois venire members Gray and Ashcraft were allowed to remain on the panel despite their stated inability to consider mitigating circumstances.
B. The seating of juror Hill, whose personal tragedy and beliefs about capital punishment impaired her ability to follow the Eighth Amendment's requirement that mitigation be considered, violated the Sixth, Eighth, and Fourteenth Amendments and state law.
C. Venire member Chaffin was improperly struck for cause solely because she proposed to seriously weigh as a mitigating circumstance the fact that *1234 Davis would never again be released from incarceration.
D. The trial court refused to instruct the sentencing jury that they were to presume that there were no aggravating circumstances until proved beyond a reasonable doubt and that aggravating circumstances must outweigh mitigating circumstances in order to impose a sentence of death.
E. The prosecutor erroneously argued to the jury that it need not consider mitigation and could disregard sympathy in toto in its deliberations.
F. Conclusion.

IV.
SENTENCING INSTRUCTION S-1 IMPERMISSIBLY "PLACED A THUMB ON DEATH'S SIDE OF THE SCALE" IN VIOLATION OF STATE LAW AND THE EIGHTH AMENDMENT BY ALLOWING THE JURY TO WEIGH BOTH THE "ROBBERY" AND "PECUNIARY GAIN" AGGRAVATORS.

V.
THE SUBMISSION OF THE "ROBBERY" AGGRAVATING CIRCUMSTANCE AT THE SENTENCING PHASE OF THIS TRIAL VIOLATED KENNETH DAVIS' RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3, § 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.

VI.
THE LEGISLATIVE MANDATE AS TO WHAT FACTORS JUSTIFY IMPOSITION OF A DEATH SENTENCE WAS FLOUTED WHEN THE PROSECUTION RELIED ON ARBITRARY FACTORS TO ADVOCATE DEATH, VIOLATING KENNETH DAVIS' RIGHTS UNDER MISSISSIPPI LAW AND THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
A. The prosecution argued Mr. Biggert's status as a police officer as a nonstatutory aggravating circumstance in violation of state law.
B. The prosecution used a prior conviction for escape as an aggravating factor.
C. The prosecution argued perceived lack of remorse as an aggravating circumstance.
D. The prosecution argued that the death sentence in this case would "send a message", thus divorcing the jury's decision from the actual blameworthiness of this defendant.
E. The prosecution vilified the defendant, comparing him to Adolf Hitler, in their attempts to divert the jury from the legislatively mandated factors for deciding punishment.
F. The prosecution relied on uncharged criminal conduct to support a death sentence in this case.
G. The prosecutor repeatedly and flagrantly ignored the trial court's instructions and admonitions concerning the cross-examination of Mr. Davis' mitigation witnesses.
H. The instructions to the jury and the wholesale "adoption" of the guilt phase testimony at the sentencing phase gave judicial approval to the prosecution's efforts to divert the jury's focus from the proper factors for decision.
I. Conclusion.

VII.
PROSECUTORIAL MISCONDUCT IN THE TRIAL OF THIS CASE VIOLATED MR. DAVIS' RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, §§ 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
A. The prosecutor referred to Mr. Davis' exercise of his right not to testify.

*1235 B. The prosecutor made improper comments about defense counsel protecting their client's constitutional rights.
C. The prosecutor argued that the jury had a "duty" to find Davis guilty of capital murder.
D. The prosecutor improperly defined reasonable doubt and negated the presumption of innocence.
E. The prosecutor elicited improper testimony.
F. The prosecutor argued outside record. (omitted from Appellant's Table of Contents)
G. Conclusion.

VIII.
THE TRIAL COURT ERRED IN EXCUSING JURORS FOR CAUSE IN VIOLATION OF MISSISSIPPI LAW AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION.

IX.
THE TRIAL COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO QUESTION JURORS FIRST IN INDIVIDUAL SEQUESTERED VOIR DIRE AND IN ALLOWING THE LIBERAL USE OF LEADING QUESTIONS BY THE PROSECUTOR TO COACH RESPONSES FROM JURORS.

X.
KENNETH DAVIS' RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE ADMISSION OF UNRELIABLE AND IRRELEVANT EVIDENCE.
A. The trial court erred in admitting an unnecessary autopsy photograph.
B. The trial court erred in allowing the testimony of Wayne Oakes in that it distorted the quantity of evidence presented by the State, in effect lessening the State's burden of proof and violated M.R.E. 702 and state law.

XI.
THE TRIAL COURT'S REFUSAL TO DRAW THE VENIRE FROM BOTH JUDICIAL DISTRICTS OF HINDS COUNTY DEPRIVED DAVIS OF A FUNDAMENTALLY FAIR TRIAL.

XII.
THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.
On Thursday, February 23, 1989, Bobby Joe Biggert (hereinafter Biggert) was shot in the head after he walked in on a robbery in progress at Dr. Duck's Pawnshop located in Jackson, Mississippi, on the corner of Raymond Road and Siwell Road[1]. Unbeknownst to Biggert, Kenneth Leon Davis (hereinafter Davis) had previously entered Dr. Duck's and was in the process of robbing the pawnshop. According to Tammy Slaton, the pawnshop clerk, Davis walked into her store at approximately 4:00 p.m., displayed a gun and told her to "[give] him all the money." Slaton placed the money in a blue zippered bag that Davis gave her. Davis also took Slaton's purse which contained her house keys, car keys and keys to the pawnshop.
Next, Davis took Slaton to the front door of the pawnshop and wedged a rake in the front door in an attempt to prevent anyone from entering the building. Davis then took Slaton to a back room where he bound her hands with a piece of sheet. While Davis tied Slaton's hands, Biggert drove up.
Biggert entered the pawnshop and went directly to the room where Davis and Slaton were located. According to Slaton, Biggert asked Davis "what was going on." Davis pointed the gun towards Biggert's head and told him to "get over here." Biggert complied with Davis' command. At this point *1236 Slaton put her head on her knees[2]. Slaton testified that she heard a gunshot and turned in time to see Biggert fall to the floor. After shooting Biggert, Davis began searching for Slaton's car keys. He found the keys and told Slaton to stay where she was. Within seconds, Davis fled the building and apparently drove off in Slaton's car.
Slaton got out of the vat, untied her wrists and called the operator and requested emergency assistance. An ambulance crew and the Jackson Fire Department responded to the call and transported Biggert to Hinds General Hospital, where he, mortally wounded from a single .22 caliber gunshot to his forehead, died a few hours later.
On Friday, February 24, 1989, Mark Womack, a security guard for Forest Wood Estates[3], discovered Slaton's stolen maroon 1980 Chevrolet Camaro near Lake Dockery. Subsequently, Slaton identified the car found at Lake Dockery as the one stolen by Davis during the Dr. Duck's robbery. The Jackson Police Department (hereinafter JPD) and the Hinds County Sheriff's Department conducted a search of the surrounding area where Slaton's car was found. The two-day search of the area led to the discovery of the following significant items: one EIG .22 caliber pistol; one "survival" type knife; one denim jacket; one box of.22 caliber short cartridges; one knife scabbard; one faded red pair of insulated coveralls; one hood and one black baseball-style cap with red letters on the front.
After recovering the .22 caliber pistol, the JPD requested and received information from the Bureau of Alcohol, Tobacco and Firearms (hereinafter ATF) as to the ownership of the EIG .22 caliber pistol. The JPD interviewed Jewel McLaurin, the owner of the pistol, and it was determined that the pistol was stolen during a February 22, 1989, burglary of her home. At this point, the police investigation into Biggert's death focused upon the person responsible for the burglary of the McLaurin residence.
Investigators interviewed McLaurin's next-door neighbor, Billy Hudson, and learned that he and David Sikes cut firewood and sold it to Dr. Duck's Pawnshop. Subsequently, the police interviewed David Sikes and his wife Linda. Linda Sikes told investigating officers that she had seen her brother, Kenneth Leon Davis, in the vicinity of the McLaurin and Hudson households on the day of the burglary. Sikes also informed police officers that Davis had recently been paroled from Parchman where he had been imprisoned for burglary of a pawnshop. The police, armed with this information, contacted the Federal Bureau of Investigation and gave them Davis' FBI number.
The FBI made a comparison of Davis' prints on file with those found on the survival knife recovered at the Lake Dockery site. The fingerprints matched. On March 16, 1989, before Davis was arrested, the JPD displayed a five-picture spread to a witness who had observed Davis in the Dairy Queen across from Dr. Duck's on the day of the robbery and murder. The witness tentatively identified Davis as the man she saw casing Dr. Duck's Pawnshop on the day of the murder. Based on the above information, investigators sought and obtained an arrest warrant for Kenneth Leon Davis for the capital murder of Biggert.
Law enforcement officers executed the arrest warrant for Davis on the night of March 16, 1989. Because Davis had recently been paroled from prison, and because of his itinerant lifestyle, the officers were not exactly sure where Davis lived. Therefore, law enforcement officers first went to Davis' parent's address in Florence, Mississippi. The officers executed a search warrant at Davis' parent's home and determined that Davis was not there. Davis' mother, Eloise Davis, informed the officers that her son lived in a trailer park in Brandon, Mississippi. The officers, acting on this information, departed the Davis home and went to the Brandon trailer park.
*1237 Upon arriving at the trailer park, the officers could not determine in which trailer Davis lived. Subsequently, Eloise Davis was brought from her home in Florence to help the officers identify her son's trailer. The officers, armed with a warrant for Davis' arrest, entered the unlocked trailer and conducted a sweep to determine if Davis was at home. After determining that Davis was not in the trailer, Detective Crisco of the JPD and Kenneth Dickerson of the Rankin County Sheriff's Office left the trailer park to obtain a warrant to search Davis' trailer. Several police officers remained at the scene to arrest Davis if he appeared.
Crisco and Dickerson went to the home of Rankin County Judge James W. Smith, Jr. to obtain a search warrant for Davis' trailer. After receiving the search warrant, but before the officers could return to Davis' trailer, they were informed that Davis had been arrested at the Brandon trailer park.
After arriving at the trailer park, the police officers proceeded to enter Davis' trailer to conduct a search of the premises. The police officers seized the following items: one sheet found hanging in the living room window, the same color and design as the strips of cloth used in the Dr. Duck's robbery to bind the wrists of Tammy Slaton; a Sanyo cassette recorder; one pair of black boots; one duffel bag with assorted clothes; one cassette case with twelve assorted tapes; one Kodak instant camera; one brown suitcase with assorted clothes and a bayonet; a paper bag with assorted papers and gloves; and one green camouflage jumpsuit. Some of these items were later identified as items taken from the McLaurin household during the February 22, 1989 burglary.
Davis was subsequently indicted and arraigned for the capital murder of Bobby Joe Biggert. After all of the pre-trial discovery was conducted and after all pre-trial motions were heard and decided, a jury was selected and Davis' trial commenced on March 11, 1991.
At trial, Tammy Slaton, the Dr. Duck's clerk, positively identified Davis as the man who shot and killed Biggert and who robbed Dr. Duck's pawnshop on February 23, 1989. The State called the following witnesses at trial and each of these witnesses positively identified Davis as the man they saw in the Dairy Queen across from Dr. Duck's pawnshop on the afternoon of February 23, 1989: Kim Davis; Beth Bush; Tracey Montgomery; Debbie Holliday Barwick. The State also called Joe Larimore as a witness, who testified that he saw Davis enter Dr. Duck's pawnshop on the day of the murder at some point between 3:00 p.m. and 4:00 p.m. (the robbery and murder took place at approximately 4:00 p.m.).
The State next called as witnesses the members of the search team that found the items recovered near Slaton's stolen car at Lake Dockery between February 25 and 26, 1989, e.g., the EIG .22 caliber pistol, the knife, the scabbard, the box of .22 caliber short cartridges, the coveralls, the baseball hat, the denim jacket and the hood. The witnesses that observed Davis in the vicinity of Dr. Duck's on February 23, 1989, identified the items of clothing as having been worn by Davis. The State also called FBI agent Imogene Van Buren Ash who testified that fingerprints found on the knife recovered at Lake Dockery matched fingerprints of Davis that the FBI had on file. The State also called ATF agent Gus Gary to testify as to the ownership of the EIG .22 caliber pistol found at Lake Dockery. Gary testified that ATF records indicated that the gun was sold by Surplus City to Oliver T. McLaurin on October 7, 1972. The State next called Oliver McLaurin to testify. McLaurin testified that he gave the gun to his mother, Jewel McLaurin. Jewel McLaurin testified that she owned the gun but that it had been stolen from her house on February 22, 1989, during a burglary[4]. Slaton, the pawnshop clerk, testified that the gun retrieved from the Lake Dockery site appeared to be similar to the one used by Davis during the Dr. Duck's robbery.
The defense chose to rest after the State's case. Davis moved for a directed verdict and *1238 that motion was denied by the trial judge. Thereafter, the trial court instructed the jurors as to the law. The jurors, after hearing all of the testimony and law, found Davis guilty of capital murder.
The penalty phase of Davis' trial was held on March 14, 1991, before the same jurors who had convicted Davis of capital murder. The jury, after hearing all of the evidence tending to establish aggravating factors and mitigating factors, sentenced Davis to death.

I.

THE SEARCH OF THE APPELLANT'S RESIDENCE WAS IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, § 23 OF THE MISSISSIPPI CONSTITUTION.
Davis argues that the trial judge committed reversible error when he permitted the State to use evidence seized from Davis' trailer. Davis argues that the underlying facts sheet for the search of Davis' trailer was not sufficient to establish the requisite probable cause needed to justify the search. Davis also argues that the fact that the law enforcement officers left Hinds County armed with three blank search warrants indicates that the search warrants were in fact general exploratory searches that were violative of Davis' Fourth Amendment rights under the United States Constitution and of his Article 3, § 23 rights under the Mississippi Constitution. Accordingly, Davis argues that this Court should reverse his conviction and sentence of death. After carefully reviewing Davis' argument and the record, we find no merit in this argument.
In Lee v. State, 435 So.2d 674, 676 (Miss. 1983), this Court adopted the "totality of the circumstances" test for determining whether probable cause exists to issue a search warrant. This test was formulated by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). The test is:
The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
In Barrett v. Miller, 599 So.2d 559, (Miss. 1992), we stated:
A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant. Branch v. State, 347 So.2d 957, 958 (Miss. 1977). Probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonable trustworthy information, are sufficient themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it. Bevill v. State, 556 So.2d 699, 712 (Miss. 1990).
599 So.2d at 566 (emphasis added).
The burden is on the State to demonstrate that the search and seizure was done in a lawful manner. Carney v. State, 525 So.2d 776, 783 (Miss. 1988), citing Canning v. State, 226 So.2d 747 (Miss. 1969). Davis relies on Carney to support his position that the police did not have probable cause to search his trailer for evidence of a crime that had been committed some three weeks earlier. Davis draws our attention to Carney, where we stated:
....
If a man of average caution had before him information which showed only that a crime had been committed and that X had committed it, he would have probable cause only for the issuance of an arrest warrant. Just because X committed a crime it does not follow that there is probable cause to search X's dwelling for evidence of that crime. See 1 W. Lafave, Search and Seizure, § 3.1(b), pages 544-546 (probable cause).
Carney, 525 So.2d at 783.
Davis argues in the case at bar, that the police did not provide any facts to the judge that would support an inference that evidence *1239 of the crime would be at Davis' trailer and, therefore, the evidence seized from Davis' trailer must be suppressed.
We disagree. As stated in Carney, the standard for determining if probable cause exists is an objective one. Carney, 525 So.2d at 783. The facts upon which the State relies to establish probable cause must be sufficient to "warrant a man of reasonable caution in the belief that the action taken was appropriate." Carney, 525 So.2d at 783, quoting Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968).
In the case sub judice, Detective Crisco, in addition to oral testimony, presented an Affidavit For Search Warrant, Search Warrant, and Underlying Facts And Circumstances Sheet to Judge Jim Smith. These three documents informed Judge Smith that:
1. The police had obtained a tentative identification of Kenneth L. Davis as the man who killed Biggert and robbed Dr. Duck's pawn shop.
2. The police recovered most of the clothing worn by Davis during the robbery in their search of the Lake Dockery site.
3. The police found boot prints around Slaton's car at the Lake Dockery site but did not find any discarded boots.

4. The police made plaster casts of the boot prints found around Slaton's stolen car at the Lake Dockery site.
5. An interview with witnesses (Davis' sister and brother-in-law) placed Davis in the neighborhood on the day Jewel McLaurin's house was burglarized. The EIG .22 caliber pistol found at Lake Dockery was the same pistol stolen during the McLaurin burglary.
6. The FBI verified that the knife found at Lake Dockery had Davis' fingerprints on it.
7. The police did not recover the dark, zippered tote bag in which Davis placed the cash from Dr. Duck's. A similar bag was reported stolen from the McLaurin household.
8. Davis was recently paroled from Parchman for burglary of a pawn shop.
9. The police had probable cause to believe that material evidence linking Davis to the Biggert murder would be found at the trailer described in the Affidavit For Search Warrant and Search Warrant.
The Affidavit For Search Warrant and Search Warrant identified the premises to be searched with reasonable certainty. See Hamilton v. State, 556 So.2d 685, 689 (Miss. 1990), cert. denied, 497 U.S. 1024, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990). The Underlying Facts And Circumstances Sheet stated that Kenneth Leon Davis was the suspect in the Biggert murder and Dr. Duck's robbery and set forth specific statements supporting the judge's determination of probable cause to search Davis' residence.
Evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence. United States v. Laury, 985 F.2d 1293, 1313 (5th Cir.1993), citing United States v. Maestas, 546 F.2d 1177, 1180 (5th Cir.1977). The Affidavit For Search Warrant and Search Warrant and Underlying Facts And Circumstances Sheet revealed that the crime involved the theft of cash and other items and that Davis had an opportunity to hide in his residence. Cash is the type of loot that criminals seek to hide in secure places like their homes. See United States v. Hendrix, 752 F.2d 1226, 1231 (7th Cir.), cert. denied, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985). Similarly, the other items sought, clothing and guns, are also the types of evidence likely to be kept in a suspect's residence. United States v. Anderson, 851 F.2d 727, 729 (4th Cir.1988), cert. denied, 488 U.S. 1031, 109 S.Ct. 841, 102 L.Ed.2d 973 (1989).
Here, the police executed a search warrant signed by Judge Smith specifically seeking a pair of work boots with waffle-type soles, a blue zippered tote bag, a pair of dark rimmed sun glasses, a model 459 Smith and Wesson 9mm pistol (Biggert's service weapon), $400.00 in currency taken during the Dr. Duck's robbery, and car keys to a 1980 Chevrolet (the keys to Slaton's car taken during the Dr. Duck's robbery). All of the above listed items were directly related to the Dr. Duck's robbery and murder of Biggert and *1240 are of the type that Davis would seek to hide in his home.
On appellate review, when reviewing a magistrate's finding of probable cause, we do not make a de novo determination of probable cause, but we simply determine if there was a substantial basis for the magistrate's determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss. 1987). A fortiori, a search warrant is to be interpreted in a common sense and realistic manner, and the magistrate's findings should be sustained in doubtful or marginal cases. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Tucker v. State, 403 So.2d 1274, 1277 (Miss. 1981). We find that the search warrant issued for Davis' trailer was supported by sufficient probable cause and therefore, Davis merits no relief as to assignment of error number I.

II.

THE PROSECUTION'S DISCRIMINATORY USE OF PEREMPTORY CHALLENGES VIOLATED THE FEDERAL AND STATE CONSTITUTIONS AND STATE LAW.
Davis argues that the State struck nine of ten eligible black veniremen in violation of Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)[5]. Davis promptly objected under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), after the State exercised its peremptory strikes and therefore this issue is properly before this Court.
Ordinarily, a defendant claiming a Batson/Powers violation must first make a prima facie showing of discrimination by establishing:
(1) that he is a member of a cognizable racial group;
(2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race;
(3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Davis v. State, 551 So.2d 165, 170 (Miss. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990); Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987), cert. denied, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); see also Taylor v. State, 524 So.2d 565, 566 (Miss. 1988).
The United States Supreme Court held in Powers that a white defendant had standing to challenge the prosecution's use of its peremptory strikes to remove black venire members. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Consequently, Davis does not have to show that he is a member of a cognizable racial group to establish a prima facie case of discrimination. Id.
Recent federal decisions, however, make it clear that once a prosecutor comes forward with reasons for his peremptory strikes, as the State did in this case, the sufficiency of the defendant's prima facie showing is no longer at issue. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395, 405 (1991).
The State, during Davis' hearing on the motion for a new trial, gave its reasons for striking black venire members. Davis was then given the opportunity to rebut the State's reasons for striking the black venire members. The State was then given an opportunity to respond to Davis' objections.
The question thus becomes whether the reasons offered by the prosecution are race neutral. Lockett, 517 So.2d at 1349. The prosecutor offered the following as race neutral reasons:
Minnie Moore: (1) vacillated on her stated ability to give the death penalty; (2) owned a day-care center and had expressed concerns that she would be worried all during the trial if she was forced to be away from her day-care; (3) was late to jury voir dire one day; (4) had a friend charged with murder; (5) stated that the prosecution must prove Davis "absolutely guilty"; (6) had no ties to law enforcement; (7) had not been a victim of crime nor did she know anyone who had been *1241 a victim of crime; (8) Moore's views on the death penalty were not ones that she had held for a long time.
Glen James: (1) had no friends or relatives in law enforcement; (2) was late in reporting for voir dire one morning; (3) D.A.'s first impression of James was that he was very dumb; (4) was unemployed and had a very unstable work record; (5) did not voluntarily disclose that he had been charged with DUI; (6) had several friends in jail; (7) the prosecution, based on comments made during voir dire, felt that James would look for reasons not to give Davis the death penalty.
Ross Clay: (1) stated on his juror form that he had "no opinion" about the death penalty; (2) was avoidant as to whether he could vote for death penalty; (3) thought the death penalty was unfairly applied; (4) became belligerent when the prosecution tried to pin him down on death penalty; (5) the prosecution felt, based upon Clay's answers to questioning, that Clay was displeased with the death penalty.
Tommie C. James, Jr.: (1) the prosecution argued that James was "crazy"; (2) James last worked in 1979; (3) was on medication (200 mg. Mellaril daily) for his mental illness; (4) he had a brother who had been addicted to cocaine.
Evone Wall: (1) was avoidant; (2) was a member of the Disciples of Christ church and members of that church are opposed to the death penalty; (3) had no ties to law enforcement; (4) first stated that she had never been a victim of crime and then changed her story; (5) made no eye contact; (6) when asked if she could think of a situation that would justify the death penalty she said "not really"; (7) the prosecution felt that Wall would look for an excuse not to give the death penalty; (8) defense asked Wall few questions.
Doris Summers: (1) had never been a victim of crime; (2) no ties to law enforcement; (3) fifty-two years old and only job she ever had was as a babysitter, e.g., no stable work history; (4) prosecution felt that Summers was a "dyed redhair[ed], drunk"; (5) Summer's body language indicated that she was opposed to death penalty; (6) her juror form said "don't believe in taking another's life"; (7) Summers felt courts were not fair; (8) raised her hand and said that she had conscientious scruples against infliction of the death penalty; (9) equivocated on whether she could "take another person's life".
Paul Campbell: (1) is an artist and the prosecution argued that "artsy" people are pro-defense; (2) has been an art instructor his entire adult life; (3) unsure about whether he would favor life without parole over death penalty; (4) felt that whites get more appeals and that there is a disproportionate application of the death penalty to blacks; (5) the prosecution mistakenly thought that Campbell said that parole was an important consideration and the prosecution thought that because this crime had occurred two years earlier, the "wounds had healed," and that parole was something he would consider; (6) first stated that he knew no one in law enforcement and then remembered that his first cousin, with whom he was very close, was a cop in Chicago and had been seriously wounded. (7) the prosecution felt that Campbell had something to hide.
Earl Ward: (1) his age; (2) was a retired minister; (3) the prosecution believed Davis' alcohol and drug use would affect his views on the death penalty; (4) he was not alert during voir dire; (5) was confused as to serving on a petit jury as opposed to serving on a grand jury; (6) Ward was from Utica and the prosecution had a juror from Utica in Marion Albert Pruett's case that had refused to return the death penalty for Pruett; (7) Ward felt that life without parole was the same as the death penalty, only slower; (8) had unpleasant experience as a juror on a civil trial; (9) his answers tended to ramble.
Mary A. Bailey: (1) unstable work record; (2) the prosecution believed that Bailey slept through parts of jury voir dire; (3) Bailey's brother was awaiting trial for shooting a police officer; (4) she was an unmarried mother of five children; (5) she vacillated and gave contradictory answers as to the death penalty; (6) the prosecution stated that she had no ties to law enforcement.
After the State gave its reasons for striking the above listed jurors, Davis was allowed to rebut the State's reasons for striking nine black veniremen. The State was then given a chance to respond to Davis' *1242 rebuttal. After hearing all of the reasons given by the State for striking certain black venire members, the trial judge, in his Opinion and Order, stated in part:
....
Since the Powers' [sic] decision was anticipated, I was observant of the Voir Dire to be in a position to rule on challenges in the event the Powers case was rendered prior to completion of jury selection. To further assist the attorneys and me, a transcript of the Voir Dire was ordered. In addition to my observations during the trial, I have reviewed the transcript, my own trial notes, a transription [sic] of the reasons given by the prosecution for their challenge and a transcription of the rebuttal to the challenge as given by the defense. I have considered the reasons for each individual challenge as stated by the prosecution and I find that the stated reasons for the challenges are valid ones and do not indicate any racial motivations.
The challenge of juror Campbell requires specific attention. At the first Motion hearing the State gave reasons for the challenge and later on rebuttal to the defense argument contended that the challenge was simply one of mistake and that the State excused him in error[6]. I accept this explanation. The challenge was not understandable to me at the time that it was made but I long ago gave up trying to understand the reasons for peremptory challenges. Jury selection is not a science and attorneys are subject to confusion in this area just as much as they are in others, especially after lengthy questioning of many prospective jurors.
....
The United States Supreme Court in Batson pointed out that "`[t]here are any number of bases' on which a prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause ... however, the prosecutor must give a `clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Batson, 476 U.S. at 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. Today we reiterate Batson's holding that "the prosecutor's explanation need not rise to the level of justifying exercise of a challenge for cause." Batson, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
In Lockett v. State, 517 So.2d 1346 (Miss. 1987), this Court presented a list of reasons accepted as race neutral by other courts throughout the country in an effort to provide guidance to trial judges in this state. Included among those reasons: age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment.
In the case at bar, the trial judge found that the State's reasons for striking black venire members were sufficiently race neutral. These findings are entitled to "great deference" from this Court on appellate review, Davis, 551 So.2d at 171, (quoting Batson, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21), and such findings will only be reversed when it is evident that the trial judge's findings are clearly erroneous. Lockett v. State, 517 So.2d at 1350. Because we cannot say that the trial judge's findings are clearly erroneous, we reject this assignment of error.

III.

THE EIGHTH AMENDMENT'S REQUIREMENT OF CONSIDERATION OF MITIGATING CIRCUMSTANCES WAS REPEATEDLY DISREGARDED.

A. In violation of Morgan v. Illinois venire members Gray and Ashcraft were allowed to remain on the panel despite their stated inability to consider mitigating circumstances.
Davis challenges the trial court's refusal to strike venire members Gray and Ashcraft. *1243 Davis argues that both of these venire members could not and would not consider any mitigating factors that Davis might present at trial. Specifically, Davis argues that he was entitled to have jurors that would consider evidence of an abusive childhood as a mitigating factor. Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Davis contends that these two venire members believed in the automatic imposition of the death penalty and therefore, the trial judge committed reversible error when he refused to strike Gray and Ashcraft for cause. See Morgan v. Illinois, 504 U.S. 719, 737, 112 S.Ct. 2222, 2234, 119 L.Ed.2d 492, 508 (1992).
During jury selection, Davis used peremptory challenge number 11 on Charles Gray. The petit jury was empaneled and jury selection was completed before Ashcraft's name was reached. Neither Gray nor Ashcraft served on Davis' jury.
Therefore, this assignment of error is without merit under this Court's ruling in Mettetal v. State, 602 So.2d 864 (Miss. 1992). In Mettetal, the Court stated:
The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use his peremptory challenges to achieve that result does not mean that the defendant was denied his constitutional rights. Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90, reh'g denied 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988). (emphasis added).

This Court explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror(s) was forced to sit on the jury by the trial court's erroneous ruling. Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988). Mettetal cannot make such a showing in the case at bar because he did in fact strike the veniremen peremptorily. The veniremen in question did not in fact sit on the jury. It is not error for the defense counsel to be compelled into using a peremptory challenge to remove a prospective juror. This assignment of error is without merit. (emphasis added).
Mettetal v. State, 602 So.2d 864 (Miss. 1992); see also Mettetal v. State, 615 So.2d 600 (Miss. 1993); Hansen v. State, 592 So.2d 114 (Miss. 1991) cert. denied 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570. Based upon the foregoing, we reject this assignment of error.

B. The seating of Juror Hill, whose personal tragedy and beliefs about capital punishment impaired her ability to follow the Eighth Amendment's requirement that mitigation be considered, violated the Sixth, Eighth, and Fourteenth Amendments and state law.
Davis argues that Dorothy Hill, who was actually seated on the jury, was in the unique position of having a sister who had been murdered during a robbery. Hill's sister, Leila Patterson, was murdered on August 3, 1980, in the course of a robbery at her home in Lowndes County, Mississippi. Patterson's killer was caught, tried and sentenced to death. See King v. State, 421 So.2d 1009 (Miss. 1982), cert. denied, 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).
This assignment of error is barred for the reason stated in III A. of Davis' argument. Davis had not used all of his peremptory challenges when he was confronted with whether to accept Hill as a juror. See Mettetal v. State, 602 So.2d 864 (Miss. 1992); Hansen v. State, 592 So.2d 114 (Miss. 1991), cert. denied, 504 U.S. 921, 112 S.Ct. 1970, 118 L.Ed.2d 570, r'hg denied, ___ U.S. ___, 112 S.Ct. 3060, 120 L.Ed.2d 924.
Our settled rule requires that, before an appellant may challenge a trial court's refusal to excuse a juror for cause, he must show that he utilized all of his peremptory challenges. The reason for the rule is that the appellant has the power to cure substantially any error so long as he has remaining unused peremptory challenges. We would put the integrity of the trial process at risk were we to allow a litigant to refrain from using his peremptory challenges *1244 and, suffering an adverse verdict at trial, secure reversal on appeal on grounds that the Circuit Court did not do what appellant wholly had power to do.

Hansen, 592 So.2d at 129-30. (citations omitted).
In the case at bar, the record clearly indicates that: (1) Davis had one peremptory challenge left when presented with Hill; (2) that Davis knew that Hill's sister had been murdered ten years prior to his trial; and (3) Davis accepted Hill as a juror. Davis merits no relief on issue III(B).

C. Venire member Chaffin was improperly struck for cause solely because she proposed to seriously weigh as a mitigating circumstance the fact that Davis would never again be released from incarceration.
On appeal, Davis challenges the lower court's ruling as improper because Chaffin, given the choice between life without parole and the death penalty, would vote for life without parole. The following exchange took place during Voir Dire:
MR. PETERS: Under any circumstances, if you're given  regardless of what the aggravating and mitigating circumstances are, would you ever consider voting for the death penalty if you were given an option of voting for life without parole?
EVELYN CHAFFIN: No.
Later, when questioned by Mr. Kirksey the following exchange ensued:
MR. KIRKSEY: If the evidence was put to you, is there ever a case that you can think of where the State could consider  or could convince you that a death penalty would be warranted?
EVELYN CHAFFIN: No.
MR. KIRKSEY: No? So it's your testimony that you could not set aside your personal opinion and follow the instructions of the rules of law?

EVELYN CHAFFIN: That's right.

MR. KIRKSEY: Nothing further, Your Honor.
The proper standard for excluding potential jurors under Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), is as follows:
whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." We note that, in addition to dispensing with Witherspoon's reference to "automatic" decision-making, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity." This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism... . many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings... . there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. ... deference must be paid to the trial judge who sees and hears the juror. (emphasis added).
Balfour v. State, 598 So.2d 731, 755 (Miss. 1992); Fuselier v. State, 468 So.2d 45 (Miss. 1985).
Generally, the findings of the trial court on juror bias are given deference. Willie v. State, 585 So.2d 660, 672 (Miss. 1991); Williamson v. State, 512 So.2d 868, 881 (Miss. 1987) (trial judge is in better position to evaluate responses). In Chaffin's case, the trial judge gave the following reasons for excusing Chaffin:
....
Regardless, we're wasting time this afternoon. The lady is not  should be excused on the basis that  that she has a  a child that requires her attention and will require it this week and next week. And, further on the basis that the  her opinion that she could not follow the law and render  vote for a death penalty if the law and evidence warrants it. Bring Ms. Chaffin back in.
Accordingly, this venire member was excused for the proper reasons. Wainwright, supra; Balfour, supra; Fuselier, supra. *1245 The lower court, based upon Chaffin's voir dire answers, believed that Chaffin could not follow the law. The lower court was warranted in striking Chaffin for cause. This assignment of error is without merit.

D. The trial court refused to instruct the sentencing jury that they were to presume that there were no aggravating circumstances until proved beyond a reasonable doubt and that aggravating circumstances must outweigh mitigating circumstances in order to impose a sentence of death.
At the penalty phase of Davis' case, the Court read Sentencing Instruction S-1 to the jury. Davis challenges the following section of S-1:
Next, to return the death penalty, you must find that the mitigating circumstances  those which tend to warrant the less severe penalty, life imprisonment  do not outweigh the aggravating circumstances  those which tend to warrant the death penalty.
Davis' argument here is two-fold: (1) should the sentencing jury be instructed that there is a presumption that there are no aggravating circumstances until proved beyond a reasonable doubt?; and (2) should the sentencing jury be clearly instructed that aggravating circumstances must outweigh mitigating circumstances in order to impose a sentence of death? Failure to instruct the jury accordingly, Davis argues, constitutes reversible error. Sentencing Instruction S-1 reads in relevant part:
You must unanimously find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstance[s] exists in this case to return the death penalty. If none of these aggravating circumstances are found to exist, the death penalty may not be imposed, and you shall write the following verdict on a sheet of paper: ...
This part of Instruction S-1 informs the jurors that no aggravating circumstances exist unless the jury finds, beyond a reasonable doubt, that they exist. Accordingly, Davis' first contention is without merit.
Davis' second contention is foreclosed by this Court's recent decision in Conner v. State, 632 So.2d 1239 (Miss. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 314, 130 L.Ed.2d 276 (1994). Conner, like Davis, argued "that a proper instruction would permit imposition of the death penalty only where the jury finds that aggravating circumstances outweigh mitigating circumstances, not vice versa." Conner, 632 So.2d at 1278. See also Shell v. State, 554 So.2d 887, 904 (Miss. 1989), rev'd on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990); Jordan v. State, 365 So.2d 1198, 1206 (Miss. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979); Gray v. Lucas, 677 F.2d 1086, 1105-06 (5th Cir.1982), cert. denied, 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983). We rejected this argument in Conner, and today, we find no reason to vary from our holding in Conner. Accordingly, Davis merits no relief on this issue.

E. The prosecutor erroneously argued to the jury that it need not consider mitigation and could disregard sympathy in toto in its deliberations.
Davis argues, inasmuch as the State's position is that the jury could not consider mercy in this case may well have interfered with the jury's consideration of all mitigating evidence, the State's closing argument violates Eighth Amendment standards. Thus, Davis argues that his death sentence should be set aside and he should receive a new trial on sentencing. The State points out that Davis failed to offer a contemporaneous objection to the State's argument and therefore, argues that Davis is procedurally barred from raising this assignment of error. We agree.
Davis' contention that the State's closing argument told the jury to disregard, in toto, sympathy, is procedurally barred. The record reveals that Davis did not object to the State's argument regarding sympathy and mitigation. In Hansen v. State, 592 So.2d 114 (Miss. 1991), this Court held:
We find in the record no defense objection to either of these arguments. Given the wide latitude generally available counsel in closing argument, we hold Hansen's failure to object leaves the points waived and requiring no further consideration.
*1246 Hansen, 592 So.2d at 139-40. (citations omitted).
Likewise, in Foster v. State, 639 So.2d 1263, 1289 (Miss. 1994), we held that the defendant was procedurally barred from challenging remarks made by the prosecution during closing argument when the record demonstrated that the defendant did not lodge a contemporaneous objection at trial. Furthermore, Davis did not offer the prosecutor's closing remarks about sympathy as a ground for a new trial in his post-trial motion. We have held that error not raised at trial or in post-trial motions may not be reviewed on appeal. Foster, 639 So.2d at 1289; Watts v. State, 492 So.2d 1281, 1291 (Miss. 1986). Any claim of error is now waived and we are precluded from considering this issue on appeal.

F. Conclusion.
Davis argues that the violations set forth above, both individually and cumulatively, skewed the sentencing process away from the consideration of mitigating factors in violation of the Eighth Amendment. This assignment of error is without merit. Many of Davis' accumulated arguments are barred and those that are not barred are without merit.

IV.

SENTENCING INSTRUCTION S-1 IMPERMISSIBLY "PLACED A THUMB ON DEATH'S SIDE OF THE SCALE" IN VIOLATION OF STATE LAW AND THE EIGHTH AMENDMENT BY ALLOWING THE JURY TO WEIGH BOTH THE "ROBBERY" AND "PECUNIARY GAIN" AGGRAVATORS.
Davis argues that the lower court erred in allowing the prosecution to submit the following aggravators:
1. whether the capital murder was committed intentionally while the defendant was engaged in the commission of armed robbery or flight after committing the crime of armed robbery.
2. whether the capital murder was committed for pecuniary gain.
Davis timely objected to the submission of these aggravating circumstances. Therefore, this issue is properly before this Court. Nevertheless, we find this argument devoid of merit.
At the time of Davis' trial, Mississippi trial courts could submit an instruction that allowed the jury in capital cases to consider both of these aggravators. However, in Willie v. State, 585 So.2d 660 (Miss. 1991), this Court announced a new rule:
When life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind the underlying felony as separate aggravators.
Willie, 585 So.2d at 661.
Willie was decided on July 24, 1991, and this Court declared that "[t]his decision [to apply this new rule] is to be prospective and will take effect from this date forward." The words "this date" refers to July 24, 1991, the day Willie was decided. Conner v. State, 632 So.2d 1239, 1269 (Miss. 1993). In the case sub judice, the sentencing and penalty phase of Davis' trial was completed by March 15, 1991. Therefore, Davis is unable to rely on the rule established in Willie.
In Conner v. State, 632 So.2d 1239 (Miss. 1993), this Court rejected the defendant's argument that we must apply the rule enunciated in Willie retroactively. This Court agreed that Teague v. Lane, 489 U.S. 288, 300, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989), requires that this Court apply new rules in an evenhanded manner. Specifically, Teague prevents "selective prospectivity," e.g., applying the new rule to the defendant in the case where the rule is announced but not to others whose case arose prior to the announcement. Conner, 632 So.2d at 1269. However, the Conner Court rejected the defendant's argument that Willie should be applied retroactively, and opined:

Teague in no way forbids the practice of "pure prospectivity," in which the new rule is applied neither to the defendant in the case where the rule is announced nor to other defendants whose cases arose before the new rule was announced. Since the defendant in Willie did not benefit from the ruling in that case, Teague, does not apply here.
Id.
Davis erroneously contends that this Court has applied the Willie decision to cases pending *1247 on direct appeal, even where the trial took place before those decisions were issued. Specifically, Davis refers to Jenkins v. State, 607 So.2d 1171 (Miss. 1992). This Court's recent decision in Foster v. State, 639 So.2d 1263 (Miss. 1993), disposes of Davis' argument.
In Foster v. State, 639 So.2d 1263 (Miss. 1993), this Court rejected the defendant's argument that Willie had been overruled by Jenkins v. State, 607 So.2d 1171 (Miss. 1992). In Foster, this Court discussed Jenkins and stated:
This Court in Jenkins reaffirmed its holding in Willie, pointing to the prospective nature of the decision and reminding the trial courts that it would be reversible error to give the two aggravators separately in future cases subsequent to Willie. The Court in Jenkins, in both the guilt and sentencing phases, emphatically stated those issues which it held were reversible error. The issue of the giving of the two aggravators was not one where the Court held reversible error. Jenkins was reversed on several grounds in both the guilt and sentencing phases, but any suggestion that Jenkins changed Willie is erroneous.
Foster, 639 So.2d at 1298-99 (emphasis added).
Thus, this assignment of error is without merit. Both Conner and Foster affirm this Court's holding that the new rule announced in Willie is to be applied prospectively from July 24, 1991. Davis was tried, convicted and sentenced to death before July 24, 1991. Davis merits no relief on this issue.

V.

THE SUBMISSION OF THE "ROBBERY" AGGRAVATING CIRCUMSTANCE AT THE SENTENCING PHASE OF THIS TRIAL VIOLATED KENNETH DAVIS' RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE 3 § 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.
Davis argues that the trial court erred in submitting as an aggravating circumstance "whether the capital murder was committed intentionally while the defendant was engaged in the commission of armed robbery or flight after committing the crime of armed robbery." The State counters that this argument is barred because Davis did not object to the submission of this aggravating circumstance at trial. We agree. The State, without waiving their procedural bar argument, contends that this assignment of error is without merit. Again, we agree.
The record reveals that Davis did not object to the submission of this aggravator at the sentencing phase of his trial. Likewise, Davis did not assign the submission of this aggravator as ground for a new trial in his post-trial motion. Therefore, Davis is procedurally barred from raising this argument for the first time on appeal. Foster, 639 So.2d at 1289; Russell v. State, 607 So.2d 1107 (Miss. 1992); Fleming v. State, 604 So.2d 280 (Miss. 1992); Cole v. State, 525 So.2d 365, 374 (Miss. 1987), cert. denied, 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 348 (1988).

VI.

THE LEGISLATIVE MANDATE AS TO WHAT FACTORS JUSTIFY IMPOSITION OF A DEATH SENTENCE WAS FLOUTED WHEN THE PROSECUTION RELIED ON ARBITRARY FACTORS TO ADVOCATE DEATH, VIOLATING KENNETH DAVIS' RIGHTS UNDER MISSISSIPPI LAW AND THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.

A. The prosecution argued Mr. Biggert's status as a police officer as a nonstatutory aggravating circumstance in violation of state law.
Davis argues that the State committed reversible error in referring during the guilt phase and the subsequent penalty phase to the fact that Biggert was a police officer. Davis argues that Biggert's occupation as a police officer has no relevance in this case.

*1248 GUILT/INNOCENCE PHASE

Davis was indicted for capital murder under Miss. Code Ann. § 97-3-19(2)(e) (Rev. 1983) for committing a murder during the commission of a robbery. Davis was not indicted under Miss. Code Ann. § 97-3-19(2)(a) (Rev. 1983) for killing a peace officer. Davis correctly points out that, in order for the State to convict him of capital murder under Miss. Code Ann. § 97-3-19(2)(a) (Rev. 1983), the State must demonstrate that he [Davis] knew that Biggert was a police officer. Wheeler v. State, 536 So.2d 1341 (Miss. 1988).
The State argues that evidence which showed Biggert was a police officer came in as incidental and, therefore, was not improper. An examination of the record indicates that both sides made mention of Biggert's occupation as a police officer during jury voir dire. At trial, Dr. Galvez, the pathologist who conducted Biggert's autopsy, testified that he had known "Officer Bobby Joe Biggert" for some number of years. Davis did not object to Galvez' characterization of Biggert as "Officer Bobby Biggert." Later, Larry Keen, a Jackson firefighter who responded to the scene of the Dr. Duck's robbery and shooting, testified that he noticed a badge in Biggert's wallet. Once again Davis did not object to this reference to Biggert's status as a law enforcement officer.
During closing arguments in the guilt phase, the prosecution speculated that Biggert might have identified himself to Davis as a police officer. The State also argued that "[h]e [Davis] executed Bobby Joe Biggert because the jig was up, because a police officer now had him, ..." Later the State argued:
BY MR. PETERS: Had he not even stolen the car, had we indicted him as killing a police officer 
BY MR. KIRKSEY:  Objection, Your Honor. This is far outside the evidence. He's now talking about a separate entire crime and a different indictment that's not even involved in this case, Your Honor. And we'd move again for a mistrial.
BY THE COURT: Denied.
BY MR. PETERS: Thank you.
MR. PETERS: But you don't have to find that. You don't even have to find that he knew Bobby Joe was a police officer, period.
....
After Davis' motion for a mistrial was denied, the State argued:
We didn't even have to prove that he was a police officer. But, nonetheless, I'm sure that you know that we did. So don't get confused with that.
This Court has traditionally given attorneys wide latitude in closing arguments. Ahmad v. State, 603 So.2d 843, 847 (Miss. 1992). Any allegedly improper prosecutorial comment must be evaluated in context, taking into consideration the circumstances of the case when deciding the comment's propriety. Ahmad, 603 So.2d at 846. Our well-worn test for determining if improper argument by the prosecutor to the jury requires reversal is:

whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created. (emphasis added).
Davis v. State, 530 So.2d 694, 701 (Miss. 1988).
In Ormond v. State, 599 So.2d 951 (Miss. 1992), we applied the test enunciated in Davis, and refused to overturn the defendant's conviction for capital rape of a child under the age of fourteen, after the prosecutor argued that the rapist took away the eight-year old victim's virginity. The defendant objected to the prosecutor's closing argument because there was no evidence presented at trial that demonstrated that the victim had been a virgin prior to the rape. The trial court overruled the defendant's objections and admonished the jury that the prosecutor's comments were only argument and not evidence. Also, prior to closing arguments, the trial court instructed the jury that counsel's closing arguments were not evidence and that argument that had no basis in evidence should be disregarded.
In the case sub judice, after Davis' objection was overruled, Davis did not request *1249 that the lower court admonish the jury that closing argument is not evidence. However, in this case, as was the case in Ormond, before closing arguments were made, the trial judge instructed the jury as follows:
Arguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument statement, or remark has no basis in the evidence, then you should disregard that argument, statement or remark.
The jury was properly instructed as to the law under which Davis was indicted. The jury was not instructed that they could find Davis guilty of capital murder for killing a police officer. The overwhelming weight of the evidence presented to the jury demonstrated that Davis killed Biggert during the course of a robbery. Therefore, it is clear that the jury's verdict was based upon Miss. Code Ann. § 97-3-19(2)(e) (Rev. 1983), and was not based upon bias or prejudice.
Because the jury was instructed that closing argument was not evidence and was therefore instructed to disregard comments not supported by the evidence, this Court presumes that the jury followed the lower court's instructions and disregarded the prosecutor's argument that was not supported by the evidence. Ormond, 599 So.2d at 961. In the case sub judice, we cannot say that the natural and probable effect of the improper argument of the prosecuting attorney created an unjust prejudice against the accused so as to result in a guilty verdict influenced by prejudice. Davis, 530 So.2d at 701. Therefore, this assignment of error is without substantive merit.

PENALTY PHASE
Any mention the State made during the penalty phase of Biggert's status as a police officer is permissible under Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); Hansen, supra. The United States Supreme Court in Payne held that it was permissible for the State to offer evidence about the victim and about the impact of the murder on the victim's family to the jury during the penalty phase in a capital murder case. Payne, 501 U.S. at 826, 111 S.Ct. at 2608-09, 115 L.Ed.2d at 736. We see no reason to exclude evidence of the victim's occupation simply because in the case sub judice, the victim was a police officer.
We also note that Davis offered no objection during the penalty phase closing argument to any mention of Biggert's status as a police officer. Therefore, Davis is procedurally barred from raising any objection to the State's mention of Biggert's occupation as a police officer during penalty phase closing arguments. Russell v. State, 607 So.2d 1107 (Miss. 1992); Fleming v. State, 604 So.2d 280 (Miss. 1992); Cole v. State, 525 So.2d 365, 374 (Miss. 1987). Davis' argument is without substantive merit, and is procedurally barred.

B. The prosecution used a prior conviction for escape as an aggravating factor.
Davis argues that the prosecution committed reversible error when it commented on Davis' prior escape. Davis argues that his "future dangerousness" is not an aggravating factor that may be submitted to the jury. Balfour v. State, 598 So.2d 731, 748 (Miss. 1992). Davis' reliance upon Balfour is misplaced.
This Court's decision in Hansen v. State, 592 So.2d 114, 145 (Miss. 1991), is dispositive of this issue, wherein this Court upheld the prosecution's proof of a "nonstatutory aggravating circumstance of future dangerousness." Davis' five prior convictions, one for escape, over the course of seven years, offers substantial evidence that [Davis] lacked the ability to conform his behavior to the norms society demands. Hansen, 592 So.2d at 145.
Prior to penalty phase deliberations, the trial judge instructed the jury as to the following aggravating factors:
(1) Whether the capital murder was committed by a person under sentence of imprisonment;
(2) Whether the capital murder was committed intentionally while the Defendant was engaged in the commission of armed robbery or flight after committing the crime of armed robbery;

*1250 (3) Whether the capital murder was committed for the purpose of avoiding or preventing a lawful arrest of Defendant;
(4) Whether the capital murder was committed for pecuniary gain.
Later the trial court stated:
I have previously read to you the list of aggravating circumstances which the court permits you to consider if you find that any of them are established by the evidence. These are the only aggravating circumstances you may consider. (emphasis added).
Here, however, evidence of Davis' earlier escape was not offered in aggravation. Clearly, the jury's verdict was not based upon this "non-statutory aggravating circumstance." Hansen, 592 So.2d at 145.
The prosecution's use of Davis' prior escape appears as rebuttal evidence. At the penalty phase, Davis called a number of witnesses who testified as to his past. As was the case in Hansen, Davis was given great deal of latitude in proving, by way of mitigation, the various problems of his youth, and, as well, his positive behavioral points. This earlier escape appears to be as much a part of Davis' life story as the proof he offered in mitigation. Therefore, this assignment of error is without substantive merit.

C. The prosecution argued perceived lack of remorse as an aggravating circumstance.
Davis argues that the State impermissibly argued that Davis should be sentenced to death because of a perceived lack of remorse. Davis argues that Reed v. State, 197 So.2d 811 (Miss. 1967), requires reversal of his death sentence. We disagree.
In Reed, the defendant was charged with non-capital murder and did not take the stand during his trial. During closing argument, the prosecutor made the following comment:
Look at the defendant. I have observed him for the past two days, and he sat and showed no emotion whatever during the trial of this cause.
Reed, 197 So.2d at 814.
This Court reversed Reed's conviction and stated:
The argument of the prosecuting attorney in the instant case called the jury's attention to the fact that the defendant sat in the courtroom and showed no emotion, and the implication was clear that, for that reason, he must be guilty.
Reed, at 815.
In Reed, the prosecutor's remarks were tantamount to telling the jury that the defendant must be guilty because he sat emotionless through the trial and did not take the stand. In the case at bar, the prosecutor, during closing argument in the penalty phase, did not state that Davis had sat emotionless through the trial. Instead, the prosecutor argued that "we have never heard one single witness say he ever felt sorry for what he did."
Davis offered several mitigation witnesses during the penalty phase of his trial. The primary thrust of their testimony was that Davis was worthy of sympathy, forgiveness and mercy. The prosecutor simply argued that none of Davis' witnesses indicated that Davis was sorry for killing Biggert. The prosecution did not argue lack of remorse as an aggravator, nor was the jury instructed as to lack of remorse. Given the wide latitude afforded attorneys during closing argument, and after evaluating the context of the prosecutor's closing argument, we conclude that the prosecutor's comment does not warrant reversal. Ahmad, 603 So.2d at 846. Therefore, this assignment of error is without substantive merit.

D. The prosecution argued that the death sentence in this case would "send a message", thus divorcing the jury's decision from the actual blameworthiness of this defendant.
Davis argues that the prosecutor improperly argued that the jury should "send" a message with its verdict. The prosecutor argued in closing:
If you want him to set an example, if an example is to be set in this case, ladies and gentlemen, to these children and other children of what not to do, return the full punishment that he deserves. That will set an example.
*1251 Nonetheless, Davis is procedurally barred from raising this assignment of error. A contemporaneous objection must be made to allegedly erroneous comments made during closing argument or the point is waived. Foster v. State, 639 So.2d at 1289; Monk v. State, 532 So.2d 592, 601 (Miss. 1988); Gray v. State, 487 So.2d 1304 (Miss. 1986); Shavers v. State, 455 So.2d 1299 (Miss. 1984). In the case sub judice, Davis failed to offer a contemporaneous objection to the prosecutor's statement. Likewise, Davis did not assign this argument as grounds for granting his request for a new trial. Therefore, any claim of error is now waived and thus barred from consideration on this appeal for failure to object. Foster, 639 So.2d at 1289.

E. The prosecution vilified the defendant, comparing him to Adolf Hitler, in their attempts to divert the jury from the legislatively mandated factors for deciding punishment.
Davis argues that the following remark, made during closing argument in the guilt phase, warrants reversal of Davis' conviction and death penalty:
BY MR. PETERS: I see what I call shark eyes, cold, dead eyes that have no soul behind them, no glitter, a killer's eyes.
BY MR. COXWELL: Your Honor, I object 
....
BY THE COURT: Sustained. Members of the jury, you'll disregard the last remarks of Mr. Delaughter.
Where serious and irreparable damage has not resulted from an objectionable closing comment, the trial judge can cure or remedy the situation by admonishing the jury to disregard the statement. Alexander v. State, 602 So.2d 1180 (Miss. 1992). In the case sub judice, Davis objected to the comments and the trial judge sustained the objection and admonished the jury to disregard the prosecutor's comments. A timely objection properly sustained with instructions to the jury to disregard the prosecutor's comments is generally sufficient to dissipate any taint of prejudice. McFee v. State, 511 So.2d 130 (Miss. 1987). The prosecutor's comment did not irreparably damage Davis' defense and thus, this comment does not warrant a reversal of Davis' conviction.
Davis next argues that the following statement made by the prosecutor during the penalty phase warrants reversal:
As a boy, Hitler sang in the choir and aspired to be a priest. But, ladies and gentlemen, when you reach adulthood things change. When I was a child, I acted like a child, I thought as a child. But when I became a man, I set aside childish things.
Davis did not object to this comment at trial nor did he assign this comment as a ground for receiving a new trial in his post-trial motion. Therefore, Davis is procedurally barred from raising this argument on appeal. Foster, 639 So.2d at 1289; Watts v. State, 492 So.2d 1281, 1291 (Miss. 1986).

F. The prosecution relied on uncharged criminal conduct to support a death sentence in this case.
Davis argues that the State improperly relied upon evidence that tended to show that Davis had burglarized Jewel McLaurin's house on the day preceding the Dr. Duck's robbery and shooting. Davis contends that the evidence regarding the burglary of McLaurin's house was irrelevant and tended to mislead the jurors by diverting their minds from the issue of whether Davis was innocent or guilty of the crime at bar. West v. State, 463 So.2d 1048, 1052 (Miss. 1985). Therefore, Davis argues, the prosecution's use of the McLaurin burglary warrants reversal of his conviction and death sentence.
This Court has generally held that evidence must be limited to the criminal activity charged in the indictment and evidence of other crimes must be excluded. Brown v. State, 483 So.2d 328, 330 (Miss. 1986); Tobias v. State, 472 So.2d 398, 400 (Miss. 1985). However, we have established exceptions to the general rule. Proof of another crime is permissible where the offense charged, and that offered to be proved, are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions. Ladner v. State, 584 So.2d 743, 758 (Miss. 1991), cert. denied, 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991).
*1252 The Mississippi Rules of Evidence provide when evidence of other crimes, wrongs, or acts may be admissible in a criminal prosecution. M.R.E. 404(b) provides:
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Notwithstanding Davis' argument, the evidence of the McLaurin burglary is admissible under M.R.E. 404(b). The prosecution did not introduce evidence relating to Davis' alleged burglary of McLaurin's home in order to show bad character. Instead, the prosecution used the evidence to prove identity and opportunity.
At trial, Davis attacked the State's linkage of the EIG .22 caliber pistol found near Slaton's abandoned car and near the knife with Davis' fingerprints on it to the murder committed at Dr. Duck's. Davis also challenged the State's proof that the EIG.22 caliber pistol recovered at Lake Dockery had ever been in Davis' possession or that it was the weapon used to murder Biggert. Davis cross-examined FBI Agent Albrecht and elicited testimony that, he [Albrecht] could not determine that the bullet recovered from Biggert was fired from the gun recovered at Lake Dockery. On cross-examination, Davis elicited testimony from FBI Agent Ash that the gun recovered at Lake Dockery had no fingerprints on it.
In the case at bar, the evidence of the burglary was offered to show that Davis had the opportunity to acquire possession of the gun prior to Biggert's killing. Testimony developed at trial indicated that Davis cut firewood with his brother-in-law David Sikes and Jewel McLaurin's next door neighbor, Billy Hudson. Davis' sister Linda testified that on the day of the McLaurin burglary, Davis had gone to Hudson's house (McLaurin's next door neighbor) because he hoped to find David Sikes so that he could get Sikes to give him a ride to his [Davis'] parents' home in Florence.
Likewise, the evidence of the burglary was offered to establish that the identity of the person who used the pistol during the Dr. Duck's robbery was the same as the person who was seen in the neighborhood of the McLaurin house carrying a duffel bag on the day of the burglary. Slaton, the pawnshop clerk, testified that the McLaurin gun found at Lake Dockery looked like the one that Davis used in the robbery and shooting. Special Agent Gus Gary of the ATF testified that he traced the pistol found at Lake Dockery to Oliver McLaurin. Oliver McLaurin testified that the pistol was identical to the pistol that he had given his mother, Jewel McLaurin. Jewel McLaurin testified that the pistol found at Lake Dockery looked like the one that had been stolen from her house on February 22, 1989. In fact, the pistol found at Lake Dockery was the gun stolen from Jewel McLaurin's home on February 22, 1989.
At trial, it was necessary for the prosecution to discuss the February 22, 1989, burglary to establish identity and opportunity. Evidence of the burglary was necessary so that the State might be able to tell the jury a "rational and coherent" story as to how the pistol came to be found near the rest of the physical evidence linking Davis to the Dr. Duck's robbery and murder. Duplantis v. State, 644 So.2d 1235, 1247 (Miss. 1994); Ladner v. State, 584 So.2d at 758. Therefore, Davis is not entitled to relief on this assignment of error.
Davis, on appeal, argues for the first time that the prosecution erroneously mentioned the McLaurin burglary during the penalty phase of his trial. The record indicates that Davis did not object to this comment during closing argument and, therefore, he is procedurally barred from raising this issue on appeal. Foster, 639 So.2d at 1289; Ahmad v. State, 603 So.2d 843, 847 (Miss. 1992).

G. The prosecutor repeatedly and flagrantly ignored the trial Court's instructions and admonitions concerning the cross-examination of Mr. Davis' mitigation witnesses.
Davis argues that the prosecutor's cross-examination of Davis' mitigation witnesses *1253 warrants a reversal of his death sentence. Davis argues that the prosecutor committed reversible error when he: (1) presented to the jury that Davis shot a dog during a prior burglary; (2) asked about Davis' alleged burglary of his Uncle's house in Harrisville, and (3) attempted to cross-examine Davis' mitigation witnesses about Davis' character. Only Davis' second contention merits discussion.
Davis argues that his death sentence should be vacated because of improper questioning of a mitigation witness. The prosecutor questioned the witness as follows:
MR. PETERS: Are you aware that he burglarized his uncle's home down in Harrisville in addition to all these other things we've talked about?
MR. COXWELL: Judge, I object to that.
BY THE COURT: Sustained.
MR. COXWELL: And move for a mistrial.
BY THE COURT: Overruled.
Davis, during the penalty phase, put his character as a youth into evidence. Linda Sikes, along with the rest of Davis' mitigation witnesses, testified that Davis had been a good person while he was in his early teens. The prosecutor attempted to rebut the witness' testimony that tended to demonstrate that Davis was a normal boy through his early teenage years. A criminal defendant can offer his good character into evidence; however, the prosecution can then rebut the defendant's evidence of character. See Hansen v. State, 592 So.2d 114, 148 (Miss. 1991). Likewise, M.R.E. 405(a) provides:
In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
As noted, Davis' objection to the above question was sustained. It is presumed that the jury follows the judge's instructions and ignores comments that have been objected to and sustained by the judge. Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985); Payne v. State, 462 So.2d 902, 904 (Miss. 1984). Therefore, there is no merit to this assignment of error.

H. The instructions to the jury and the wholesale "adoption" of the guilt phase testimony at the sentencing phase gave judicial approval to the prosecution's efforts to divert the jury's focus from the proper factors for decision.
Davis argues that the lower court committed reversible error when it allowed the prosecution to adopt all of the testimony from the guilt phase. Davis contends that this "wholesale adoption of the testimony" from the guilt phase allowed the jury to sentence Davis to death based upon non-statutory aggravating circumstances and therefore, his death sentence should be set aside and he should be given a new trial as to the penalty phase. We disagree.
Davis cites Balfour v. State, 598 So.2d 731, 747-48 (Miss. 1992), for the proposition that the State may only offer evidence of the eight aggravating circumstances during the penalty phase of the trial. See also Stringer v. State, 500 So.2d 928, 941 (Miss. 1986); Coleman v. State, 378 So.2d 640, 648 (Miss. 1979). Any mention of nonstatutory aggravators during the penalty phase, Davis argues, warrants a reversal of his death sentence. However, in this assignment of error, Davis does not point to any testimony or evidence given at the guilt phase of his trial that would allow the jury to consider nonstatutory aggravating circumstances.
During the penalty phase, the trial judge, after all of the evidence establishing aggravating and mitigating circumstances had been presented, instructed the jury as follows:
Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
(1) Whether the capital murder was committed by a person under sentence of imprisonment;
(2) Whether the capital murder was committed intentionally while the Defendant was engaged in the commission of armed robbery or flight after committing the crime of armed robbery;
(3) Whether the capital murder was committed for the purpose of avoiding or *1254 preventing a lawful arrest of the Defendant;
(4) Whether the capital murder was committed for pecuniary gain.
The State argues that Jackson v. State, 337 So.2d 1242, 1256 (Miss. 1976), controls the case at bar. Jackson, provides in part:
At this hearing [penalty phase], the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment. (emphasis added).
Jackson, 337 So.2d at 1256.
The State reintroduced all of the evidence associated with the armed robbery of Dr. Duck's and murder of Biggert. With the exception of the McLaurin burglary, no mention of any other crime or bad act from the guilt phase was admitted into evidence during the penalty phase of the trial. The McLaurin burglary was not used by the trial court as an aggravator, nor did the jury find that the McLaurin burglary was an aggravating circumstance. See Stringer v. State, 500 So.2d 928, 941 (Miss. 1986). Therefore, this assignment of error is without merit.

I. Conclusion.
On several of Davis' assignments of error, he simply failed to object at trial to alleged error. None of Davis' foregoing assignments of error warrant a reversal of his conviction or death sentence.

VII.

PROSECUTORIAL MISCONDUCT IN THE TRIAL OF THIS CASE VIOLATED MR. DAVIS' RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 3, §§ 14, 26 AND 28 OF THE MISSISSIPPI CONSTITUTION OF 1890.

A. The prosecutor referred to Mr. Davis' exercise of his right not to testify.
Davis assigns the following as an impermissible comment by the prosecution on Davis' failure to testify:
MR. PETERS: Mr. Kirksey said that I'm going to stand up here and holler: Death, death, death, death. Well I'm not. I'm going to ask for justice, justice, justice, justice. Because he is the one that committed death. He is the one that showed no compassion, but would send a lawyer up here and ask you for compassion. He is the one that we have never heard one single witness say he ever felt sorry for what he did 
MR. COXWELL:  Your Honor, I object to him making any reference to Mr. Davis' silence.
BY THE COURT: Overruled.
Davis correctly points out that his privilege against self-incrimination, guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and by Art. 3, § 26, of the Mississippi Constitution of 1890  attend him at the penalty phase of his trial. Hansen v. State, 592 So.2d 114, 149 (Miss. 1991). This Court has recognized that a direct comment on a Defendant's failure to testify is not allowed and constitutes reversible error. Butler v. State, 608 So.2d 314, 318 (Miss. 1992); Livingston v. State, 525 So.2d 1300, 1305-08 (Miss. 1988). Prosecutors are also forbidden from referring to a defendant's failure to testify by "innuendo and insinuation." Wilson v. State, 433 So.2d 1142, 1146 (Miss. 1983).
Balanced against the defendant's right against self-incrimination however, is the rule that attorneys are to be given wide latitude in making their closing arguments Johnson v. State, 477 So.2d 196, 209 (Miss. 1985). Thus, although the prosecutor is forbidden from making a direct reference to the defendant's failure to testify, all other statements must be viewed on a case-by-case basis. Jimpson v. State, 532 So.2d 985, 991 (Miss. 1988).
In Jimpson, we noted that there is a difference between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. Jimpson, 532 So.2d at 991. Furthermore, in *1255 Shook v. State, 552 So.2d 841, 851 (Miss. 1989), this Court recognized that "not every comment regarding the lack of any defense or upon the defense presented is equivalent to a comment on the defendant's failure to testify ... Moreover the State is entitled to comment on the lack of any defense, and such a comment will not be construed as a reference to a defendant's failure to testify by `innuendo and insinuation.'" Shook, 552 So.2d at 851.
The prosecutor's comments in the case sub judice were intended to call to the jury's attention, the lack of a mitigation defense presented by Davis during the penalty phase of his trial. Davis presented mitigation witnesses who testified that Davis grew up with an alcoholic mother and moved frequently because of his father's job. Davis also argued as mitigation that he could serve as a useful negative role model for his nieces and nephews and other children. The prosecutor's remarks point out that Davis' reasons for not receiving the death penalty were insufficient and that Davis was reduced to sending his lawyer in to plead for his life after all else had failed. Therefore, the prosecutor made reference to Davis' defense and did not comment on his failure to testify. Accordingly, Davis warrants no relief on this assignment of error.

B. The prosecutor made improper comments about defense counsel protecting their client's constitutional rights.
Davis argues that the prosecutor committed reversible error when he made "highly derogatory remarks" about defense counsel's attempts to preserve Davis' rights. Davis assigns as error the following closing argument made by the prosecution during the guilt phase of the trial.
MR. PETERS: And then they talk to you about the identification of these young girls that came into the courtroom. On one of them he asked the little girl, he said, "Well, didn't you look at a picture of this guy before you came in here? And isn't that how you know who he is, because you looked at that picture?" "Yes, I looked at a picture; but, no, I would have been able to have picked him out anyway."
And so Bobby got up and got that lineup photograph and said, "Is this the picture you looked at and picked him out of?" "Yes, it is." "We offer this into evidence, Your Honor, to show what she looked at." "Objection. That doesn't look like what he looks like now, Your Honor."
BY MR. COXWELL: Your Honor, I object to  I object to him trying to denigrate our job as  as Mr. Davis' attorney.
BY THE COURT: Overruled.
The prosecutor made this comment in response to the following comment made during closing argument by Davis:
And you've seen State's Exhibit whatever number it was that Mr. Delaughter referred to and he asked you to look at and decide for yourself. Well, the honest  an honest statement was made by one of these witnesses. She told you before she came into this courtroom she looked at these pictures to make sure she would know which one was the Defendant.
Clearly, Davis invited the prosecutor's response when, during closing argument, he called into question whether one of the State's witnesses could actually identify Davis. The prosecution responded to this invitation and argued that the witness was certainly capable of identifying Davis. Accordingly, this comment is not the type of comment that would warrant reversal under Ormond v. State, 599 So.2d 951 (Miss. 1992). Therefore, this assignment of error is without merit.

C. The prosecutor argued that the jury had a "duty" to find Davis guilty of capital murder.
Davis contends that the prosecutor committed reversible error when he argued that the jury should "do their duty" and convict Davis of capital murder. Davis argues that this argument warrants a reversal of his conviction and death sentence.
The State correctly points out that Davis did not object to this comment. Davis' failure to object at trial and "failure to include the reference in a motion for a new trial obviates his ability to assign the comments as error." Ahmad v. State, 603 So.2d 843, 846 (Miss. 1992). Therefore, Davis is *1256 procedurally barred from raising this argument.

D. The prosecutor improperly defined reasonable doubt and negated the presumption of innocence.
Davis argues the prosecutor committed reversible error when he improperly defined reasonable doubt and negated the presumption of innocence during voir dire. The State correctly points out that Davis did not object to this alleged error and therefore, the State argues, Davis is barred from raising this assignment of error on appeal. Cole v. State, 525 So.2d 365 (Miss. 1987). We agree. Davis is procedurally barred from raising this argument on appeal.

E. The prosecutor elicited improper testimony.
Davis argues that the prosecution elicited improper testimony from FBI Agent Albrecht during the guilt phase of the trial and, therefore, his conviction and death sentence should be set aside. Once again the State points out that Davis failed to object at trial to the challenged testimony. Likewise, we note that Davis did not assign this alleged error as a ground for receiving a new trial in his post-trial motion. Therefore, the State argues that Davis is procedurally barred from raising this issue on appeal. We agree. Davis is procedurally barred from raising this argument on appeal. Foster v. State, 639 So.2d 1263, 1289 (Miss. 1994).

F. The prosecutor argued outside the record.
Once again Davis argues that the prosecutor committed reversible error during closing argument when he argued facts outside the record. Specifically, Davis argues that the prosecutor committed reversible error when he discussed Biggert's employment as a police officer. This argument has been addressed in VI(A) of this opinion and we found it to be without merit. Accordingly, Davis is entitled to no relief on this argument.

G. Conclusion.
Davis argues that the cumulative effect of these errors deprived him of a fair trial and therefore his conviction should be reversed and his death sentence should be vacated. However, once again most of Davis' assigned errors are subject to procedural bar. These assignments of error, taken alone or cumulatively, do not warrant a reversal of Davis' conviction and death sentence. Therefore, this assignment of error is without merit.

VIII.

THE TRIAL COURT ERRED IN EXCUSING JURORS FOR CAUSE IN VIOLATION OF MISSISSIPPI LAW AND THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION.
Davis argues that the trial judge erred in excusing two potential jurors for cause. Specifically, Davis argues the judge erroneously excused venire members Evelyn Chaffin and Rosa Evans for cause. Davis argues that his conviction and death sentence must be reversed. Fuselier v. State, 468 So.2d 45 (Miss. 1985). The trial judge's excusal of Evelyn Chaffin was discussed at III(C) in this opinion. As discussed in issue III(C), the trial judge properly excused venire member Chaffin for cause.
Next, we will address whether the trial judge committed reversible error when he excused venire member Rosa Evans for cause. The proper standard under Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), for excluding potential jurors is as follows:
whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." We note that, in addition to dispensing with Witherspoon's reference to "automatic" decision-making, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity." This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism... . many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen *1257 may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings.... there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. ... deference must be paid to the trial judge who sees and hears the juror. (emphasis added).
Balfour v. State, 598 So.2d 731, 755 (Miss. 1992); Fuselier v. State, 468 So.2d 45 (Miss. 1985).
In a recent case, we stated:

[J]urors who oppose the death penalty or believe it unjust, may serve as jurors in capital cases "so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." Lockhard, v. McCree, 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137, 149-50 (1986). Hansen v. State, 592 So.2d 114, 128 (1991). In other words, personal opposition to capital punishment is not a constitutional impediment to juror service so long as the juror is able to set aside his or her personal belief and fairly consider all sentencing options under the rule of law. (emphasis added).
Balfour v. State, 598 So.2d 731 (Miss. 1992).
This Court has generally given deference to the findings of the trial court on juror bias. Willie v. State, 585 So.2d 660, 672 (Miss. 1991); Williamson v. State, 512 So.2d 868, 881 (Miss. 1987) (trial judge is in better position to evaluate responses).
Initially venire member Evans indicated that she could not give the death penalty. Evans then indicated to the prosecution that she would always give life in prison over the death penalty. Finally, Evans told the prosecution under which circumstances she could impose the death penalty. Evans said she could impose the death penalty if some of her relatives were murdered. Later, Evans told the Court that she could impose the death penalty if a family member of hers was killed, if a child or old person was murdered, or if the victim was mutilated. After questioning Evans, the trial judge excused Rosa L. Evans for cause.
The following exchange is indicative of the problem the lower court faced in attempting to determine if this venire member would follow the law:
MR. KIRKSEY: Understanding, of course, that  if I understand you correctly, you have  you have, like most people, some personal opinion, you know, where, say, nine out of ten times you might not favor the death penalty. But if I understand you correctly, Rosa, if the State puts on enough prove [sic] and proves to you by the evidence that this would be a case that would warrant your consideration of the death penalty, that you would be able to follow the Court's instructions and consider the imposition of the death penalty?

ROSA L. EVANS: No.

MR. KIRKSEY: That's what you just said; isn't it? You could follow the instructions and consider it?
ROSA L. EVANS: The death penalty?
MR. KIRKSEY: If they showed you that this was one of the horrible cases, and it  and it was one that warranted it, could you then follow the instructions, the rules, and consider the imposition of the death penalty if it was so warranted? And that's all the Court would ask you to do?
ROSA L. EVANS: Yes, I think I could.
After both the prosecution and defense questioned Evans, the trial judge questioned Evans further and asked her the following:
BY THE COURT: Okay. Now, would you be able to follow those instructions and weigh them, and make a determination whether the mitigating factors outweigh the aggravating factors, that is whether things about a defendant tending to warrant a life imprisonment outweigh those factors that you find that would tend to warrant the death penalty? Would you be able to do that? First, have I confused you? Or do you understand what I'm asking?
ROSA L. EVANS: No, you haven't confused me. I just don't want to be put in that position.

*1258 BY THE COURT: Well, of course, nobody wants to be put in that position, Ms. Evans. That's  but that  somebody has to be put in that position. And we're trying to determine who will be selected on the jury. Am I interpreting that you're shaking your head no, or is that  is that just consideration that your doing?
ROSA L. EVANS: Just considering.
BY THE COURT: All right.
ROSA L. EVANS: Something I can't say right now.
In the case sub judice, the trial judge did not abuse his discretion in excusing venire member Rosa L. Evans for cause. Jurors who oppose the death penalty or believe it unjust, may serve as jurors in capital cases "so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." Lockhart v. McCree, 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986); Balfour v. State, 598 So.2d 731 (Miss. 1992). When asked point blank by the trial judge whether she could follow the instructions and law as to the death penalty, Evans failed to clearly indicate that she was willing to temporarily set aside her own beliefs and follow the rule of law. Upon reviewing the record of voir dire in its entirety, we cannot say that the trial judge abused his discretion when he excused Evans. Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Therefore, this assignment of error is without merit.

IX.

THE TRIAL COURT ERRED IN ALLOWING THE DISTRICT ATTORNEY TO QUESTION JURORS FIRST IN INDIVIDUAL SEQUESTERED VOIR DIRE AND IN ALLOWING THE LIBERAL USE OF LEADING QUESTIONS BY THE PROSECUTOR TO COACH RESPONSES FROM JURORS.
Davis argues that the trial judge committed reversible error when he allowed the prosecution to "educate" jurors during individual sequestered voir dire. Davis complains in effect that the prosecution's use of leading questions allowed them to coach potentially favorable venire members into giving favorable responses so that they could stay on the venire panel.
Voir dire in criminal cases is governed by the Uniform Criminal Rules of Circuit Court Practice 5.02, which provides:
In the voir dire examination of jurors, the attorney shall direct to the entire venire questions only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked.
Rule 5.02 of the Uniform Criminal Rules of Circuit Court Practice does not address the manner of questioning allowed during voir dire. This issue appears to be one of first impression within the State of Mississippi. The cases Davis cites are inapposite to the case sub judice. In Schwenke v. State, 768 P.2d 1031 (Wyo. 1989), the Wyoming Supreme Court questioned the trial judge's use of leading questions of the venire members. The Wyoming Court stated that the trial court's use of leading questions was a tool of advocacy and not neutrality. Schwenke, 768 P.2d at 1033.
In State v. Williams, 550 A.2d 1172 (N.J. 1988), the New Jersey Supreme Court expressed reservations over an instruction given by the trial judge to venire members. The instruction effectively told the jurors what answers during the death qualification process lead to automatic excusal from the venire panel and what responses would allow them to stay on the venire panel. Williams, 550 A.2d at 1181.
The case at bar differs from both of the cases Davis cites. In Schwenke and Williams the trial judge asked the leading questions. In the case at bar, the prosecution asked the questions. As the Court in Schwenke, observed: "[leading questions] are the tool of advocacy, not neutrality." Schwenke, 768 P.2d at 1033. In the case at bar, the prosecution was acting as an advocate when it asked the alleged leading questions. In Williams and Schwenke the trial *1259 judge acted as an advocate through his questions and instructions and therefore the process of voir dire lost its neutrality. Accordingly, these cases are not dispositive to the case at bar and this assignment of error is without merit.

X.

KENNETH DAVIS' RIGHT TO A FAIR TRIAL WAS VIOLATED BY THE ADMISSION OF UNRELIABLE AND IRRELEVANT EVIDENCE.

A. The trial court erred in admitting an unnecessary autopsy photograph.
One photograph of Biggert, Exhibit 2, was introduced at trial despite Davis' objections that the picture was inadmissible under McNeal v. State, 551 So.2d 151 (Miss. 1989). This photograph, which is in color, shows Bobby Joe Biggert's body on the coroner's table and depicts the bullet entrance wound to the left front of his head and the bruising around Biggert's eyelids caused by the kinetic energy the bullet created when it entered Biggert's skull cavity. The submission of this photograph to the jury, Davis argues, constitutes reversible error.
The law concerning admission of photographs is stated as follows:
It is well settled that admission of photographs into evidence rests within the sound discretion of the trial court. Ladner v. State, 584 So.2d 743, 753-54 (Miss. 1991) (cert den. 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754) (citing Marks v. State, 532 So.2d 976, 980 (Miss. 1988); McFee v. State, 511 So.2d 130, 134-35 (Miss. 1987)).
Additionally, the trial court, as well as the appellate court on review, must look at Mississippi Rule of Evidence 403 which states: "[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This is the proper criteria for the trial court to consider in making its decision whether to admit photographs or not. Hurns contends the lower court abused its discretion in applying Rule 403, citing Sudduth v. State, 562 So.2d 67 (Miss. 1990). In Sudduth, this Court held that photographs of a murder victim should not ordinarily be admitted where the "killing is not contradicted or denied, and the corpus delicti and identify of victim have been established." Id. at 70 (citing Davis v. State, 551 So.2d 165, 173; Shearer v. State, 423 So.2d 824, 827 (Miss. 1982)).
The Court in Sudduth, however, went on to say that photographs of bodies may nevertheless be admitted into evidence in criminal cases where they have probative value and where they are not so gruesome or used in such a way as to be overly prejudicial or inflammatory.
Hurns v. State, 616 So.2d 313, 319 (Miss. 1993).
As part of the murder investigation, the body of Bobby Joe Biggert was examined by forensic pathologist, Dr. Rodrigo Galvez. Galvez testified as to the bruising found around Biggert's eyelids and identified a bullet entrance wound located on the left side of Biggert's head. Galvez testified that the gunshot fired into Biggert's head was fired at a distance greater than two feet and that the bullet wound to the head was the cause of Biggert's death.
Accordingly, the photograph of Biggert's body was probative in that it showed certain injuries that were directly related to Biggert's cause of death. This photograph does not rise to the level of prejudice to the defendant that requires reversal under McNeal. Therefore, this assignment of error is without merit.

B. The trial court erred in allowing the testimony of Wayne Oakes in that it distorted the quantity of evidence presented by the State, in effect lessening the State's burden of proof and violated M.R.E. 702 and state law.
Davis argues that the trial court committed reversible error in allowing FBI agent Wayne Oakes to testify because Oakes' testimony was not of assistance to the jury. The use of testimony by experts is governed by M.R.E. 702, which states:

*1260 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.
The admissibility of evidence rests within the trial court's discretion. Hall v. State, 611 So.2d 915, 918 (Miss. 1992); Wade v. State, 583 So.2d 965, 967 (Miss. 1991). Unless the trial judge abused his discretion in allowing the evidence, this Court will not reverse his ruling. Hall, 611 So.2d at 918; Lewis v. State, 573 So.2d 719, 722 (Miss. 1990).
The State called Oakes to provide expert testimony to prove that the strip of cloth found at Dr. Duck's pawnshop used to bind Slaton's hands matched exactly the piece of cloth torn from the sheet that was found hanging in Davis' trailer window. Oakes testified that he was employed with the hairs and textile fibers unit at the Washington, D.C., FBI laboratory for the last nine and one half years. Oakes testified that his job was to compare hairs and fibers to determine if they matched with other samples. Oakes' education, training and experience qualified him to give an opinion as to whether the cloth strip found at Dr. Duck's matched the sheet found in Davis' trailer.
Oakes testified that the floral patterns found on both pieces of sheet were an exact match. Oakes also testified that cuts and tears on the strip used to bind Slaton corresponded with cuts and tears on the sheet found in Davis' trailer.
Oakes' testimony was not only that the pieces of cloth looked like exact matches, but he also demonstrated that the tears and cuts on the pieces of sheet matched exactly. Therefore, this testimony satisfies the requirement of M.R.E. 702. Accordingly, this assignment of error is without merit.

XI.

THE TRIAL COURT'S REFUSAL TO DRAW THE VENIRE FROM BOTH JUDICIAL DISTRICTS OF HINDS COUNTY DEPRIVED DAVIS OF A FUNDAMENTALLY FAIR TRIAL.
Davis was convicted of killing Biggert in the First Judicial District of Hinds County, Mississippi. As a result of pre-trial publicity Davis was granted a change of venue to Forrest County. However, as a result of Davis' mother's death in an auto accident, Davis sought and was granted a mistrial. Davis subsequently requested that venue be moved back to Hinds County. Now, Davis argues that the trial judge abused his discretion when he refused to draw venire members from both judicial districts of Hinds County.
Davis correctly points out that Miss. Code Ann. § 13-5-21 (Supp. 1991), allows the trial judge to draw the jury venire members from both Judicial Districts of Hinds County. Section 13-5-21 provides:
In counties where there are two (2) circuit court districts, the jury commission shall make a list of jurors for each district in the manner directed for a county, and the same shall be treated in all respects as for an entire county. In such counties a juror shall not be required to serve out of his district, except should the court, in its discretion, otherwise direct, and except when drawn on a special venire. In either of such excepted cases, the jury shall be drawn from the two (2) jury boxes if the court so direct, one (1) name for each alternately. (emphasis added).
This Court previously addressed this issue in Taylor v. State, 148 Miss. 621, 114 So. 390 (1927). Taylor is dispositive of the case sub judice. In Taylor, this Court, when confronted with the defendant's challenge to the trial judge's refusal to draw jury venire members from both judicial districts of Chickasaw County, held that [the defendant did not] contend "in this record that the jury was in any manner unfair, biased, or partial, and the record shows that the defendant was tried by a fair and impartial jury." Taylor, 148 Miss. at 625. The Taylor Court then discussed Section 2338, Hemingway's Code 1927 (the precursor to Miss. Code Ann. § 13-5-21) and held that the statute vested discretion in the judge as to whether to draw a jury venire from both judicial districts in a county that has two judicial districts. The *1261 Court found that the statute [Section 13-5-21] was purely discretionary and absent an abuse of discretion by the trial judge, this Court would not reverse the trial judge's decision to draw a special venire from one judicial district. Finally, this Court held that where there was "no evidence to show that the defendant was not tried by a fair and impartial jury, error may not be predicated for an irregularity in drawing or impaneling the jury." Taylor, 148 Miss. at 626.
In this assignment of error Davis does not allege that he was tried by a biased and partial jury. Likewise, Davis does not offer evidence to indicate that his jury was biased or partial. Accordingly, Davis has not established in any way that the trial judge abused his discretion in refusing his request to draw venire members from both judicial districts of Hinds County. Davis merits no relief on this assignment of error.

XII.

THE AGGREGATE ERROR IN THIS CASE REQUIRES REVERSAL OF THE CONVICTION AND DEATH SENTENCE.
Davis argues that he is entitled to a new trial as a result of the accumulation of errors at trial. Hansen v. State, 592 So.2d 114, 153 (Miss. 1991). Finally, Davis argues that his trial did not meet the exacting standards as required by Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 878-79, 71 L.Ed.2d 1 (1982), and therefore his conviction and sentence must be set aside.
This assignment of error is without merit. The assignments of error raised by Davis are without merit or procedurally barred. Accordingly, this assignment of error is without merit.

CONCLUSION
In addition to reviewing the legal errors enumerated by the defendant for merit, and pursuant to Miss. Code Ann. § 99-19-105(3) (Supp. 1985), this Court shall determine:
(a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
(b) Whether the evidence supports the jury's or judge's findings of a statutory aggravating circumstance as enumerated in Section 99-19-101; and
(c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Since Jackson v. State, 337 So.2d 1242 (Miss. 1976), this Court has upheld the imposition of the death penalty in the cases listed in the appendix. We have carefully reviewed those cases in the appendix and compared them with the case and sentence sub judice.
We find that the sentence of death in the case sub judice was not imposed under the influence of passion, prejudice, or any other arbitrary factor; that the evidence supports the jury's finding of statutory aggravating circumstances listed in Miss. Code Ann. § 99-19-101(5) (Supp. 1983); and, after considering the crime and the appellant, we find that the sentence of death in this case is not excessive or disproportionate to those cases in which such sentence has been imposed.
For all of the above noted reasons, we find no error in the trial below, having reviewed the record as submitted from the Circuit Court of Hinds County; therefore, we affirm the conviction of capital murder and sentence of death.
CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH AFFIRMED. EXECUTION DATE TO BE SET WITHIN SIXTY DAYS OF FINAL DISPOSITION OF THIS CASE PURSUANT TO MISS. CODE ANN. § 99-19-101(5)(f)(1972) AND MISS.R.APP.P. 41(a).
PRATHER, P.J., and PITTMAN, BANKS and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., concurs with separate written opinion.
SULLIVAN, J., dissents with separate written opinion joined by HAWKINS, C.J.
MCRAE and SMITH, JJ., not participating.

*1262 APPENDIX

DEATH CASES AFFIRMED BY THIS COURT

Chase v. State, 645 So.2d 829 (Miss. 1994).

Foster v. State, 639 So.2d 1263 (Miss. 1994).

Conner v. State, 632 So.2d 1239 (Miss. 1993).

Hansen v. State, 592 So.2d 114 (Miss. 1991).
[*] Shell v. State, 554 So.2d 887 (Miss. 1989), Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) reversing, in part, and remanding, Shell v. State, 595 So.2d 1323 (Miss. 1992) remanding for new sentencing hearing.

Davis v. State, 551 So.2d 165 (Miss. 1989).

Minnick v. State, 551 So.2d 77 (Miss. 1989).
[*] Pinkney v. State, 538 So.2d 329 (Miss. 1988), Pinkney v. Mississippi, 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931 (1990) vacating and remanding, Pinkney v. State, 602 So.2d 1177 (Miss. 1992) remanding for new sentencing hearing.
[*] Clemons v. State, 535 So.2d 1354 (Miss. 1988), Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990) vacating and remanding, Clemons v. State, 593 So.2d 1004 (Miss. 1992) remanding for new sentencing hearing.

Woodward v. State, 533 So.2d 418 (Miss. 1988).

Nixon v. State, 533 So.2d 1078 (Miss. 1987).

Cole v. State, 525 So.2d 365 (Miss. 1987).

Lockett v. State, 517 So.2d 1346 (Miss. 1987).

Lockett v. State, 517 So.2d 1317 (Miss. 1987).

Faraga v. State, 514 So.2d 295 (Miss. 1987).
[*] Jones v. State, 517 So.2d 1295 (Miss. 1987), Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988) vacating and remanding, Jones v. State, 602 So.2d 1170 (Miss. 1992) remanding for new sentencing hearing.

Wiley v. State, 484 So.2d 339 (Miss. 1986).

Johnson v. State, 477 So.2d 196 (Miss. 1985).

Gray v. State, 472 So.2d 409 (Miss. 1985).

Cabello v. State, 471 So.2d 332 (Miss. 1985).

Jordan v. State, 464 So.2d 475 (Miss. 1985).

Wilcher v. State, 455 So.2d 727 (Miss. 1984).

Billiot v. State, 454 So.2d 445 (Miss. 1984).

Stringer v. State, 454 So.2d 468 (Miss. 1984).

Dufour v. State, 453 So.2d 337 (Miss. 1984).

Neal v. State, 451 So.2d 743 (Miss. 1984).

Booker v. State, 449 So.2d 209 (Miss. 1984).

Wilcher v. State, 448 So.2d 927 (Miss. 1984).

Caldwell v. State, 443 So.2d 806 (Miss. 1983).

Irving v. State, 441 So.2d 846 (Miss. 1983).

Tokman v. State, 435 So.2d 664 (Miss. 1983).

Leatherwood v. State, 435 So.2d 645 (Miss. 1983).

Hill v. State, 432 So.2d 427 (Miss. 1983).

Pruett v. State, 431 So.2d 1101 (Miss. 1983).

Gilliard v. State, 428 So.2d 576 (Miss. 1983).

Evans v. State, 422 So.2d 737 (Miss. 1982).

King v. State, 421 So.2d 1009 (Miss. 1982).

Wheat v. State, 420 So.2d 229 (Miss. 1982).

Smith v. State, 419 So.2d 563 (Miss. 1982).

Johnson v. State, 416 So.2d 383 (Miss. 1982).

Edwards v. State, 413 So.2d 1007 (Miss. 1982).

Bullock v. State, 391 So.2d 601 (Miss. 1980).

Reddix v. State, 381 So.2d 999 (Miss. 1980).

Jones v. State, 381 So.2d 983 (Miss. 1980).

Culberson v. State, 379 So.2d 499 (Miss. 1979).

Gray v. State, 375 So.2d 994 (Miss. 1979).

Jordan v. State, 365 So.2d 1198 (Miss. 1978).

Voyles v. State, 362 So.2d 1236 (Miss. 1978).

Irving v. State, 361 So.2d 1360 (Miss. 1978).

Washington v. State, 361 So.2d 61 (Miss. 1978).

Bell v. State, 360 So.2d 1206 (Miss. 1978).
[*] Case was originally affirmed in this Court but on remand from U.S. Supreme Court, case was remanded by this Court for a new sentencing hearing.
*1263 BANKS, Justice, concurring:
I concur in the result reached by the majority but a word of explanation beyond that set forth in the majority opinion must be added.

I.
With respect to the Batson/Powers challenge, I most emphatically would not ordinarily accept some of the reasons proffered. For example, that the prospective juror has never been a victim of a crime, or is not related to law enforcement, would be viewed as pretextual without further explanation by the district attorney. This is especially so here because of several factors. The prosecutor involved has a history of admitting a racial animus in the selection of jurors in capital cases. See Edwards v. Thigpen, 682 F. Supp. 1374, 1376 (S.D.Miss. 1987), aff'd, 849 F.2d 204 (5th Cir.1988).[1] In this case, every black prospective juror proffered to him save one was stricken. Nine or ten peremptory challenges utilized were against black prospective jurors. This is an especially strong prima facie case, the fact that a white defendant and white victim were involved notwithstanding. It follows that the reasons proffered should be given close scrutiny. Mack v. State, 650 So.2d 1289 (Miss. 1994).
When we turn to the proffered reasons for peremptory challenges we find additional cause for concern. The litany of reasons cited indicates a suspect "shotgun" approach and, in the final analysis, for one juror, "attorney's mistake" was the last refuge. Nevertheless, I acquiesce in accepting the trial court's determination of non-discrimination for reasons which follow.
Davis moved to disallow the peremptory strikes made by the state after all twelve regular jurors had been accepted and prior to the consideration of alternates. The initial ruling was that, because Davis was white, no prima facie case of discrimination had been shown. Prior to the motion for new trial, the United States Supreme Court handed down Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), holding that white defendants had standing to assert the rights of black prospective jurors, thus, applying the Batson ruling to situations where the defendant did not share the characteristic discriminated against.
The issue was visited anew in Davis' case on motion for a new trial. The prosecutor was called upon to state reasons and did so after a review of the transcript of the voir dire. The proceedings recessed in order to allow the defendant to rebut those reasons utilizing the voir dire transcript, and the transcript of the proceedings wherein the reasons were stated. Following rebuttal, there was another recess to allow transcription of the rebuttal and, later the state offered explanations in reply. The result is an unusually lengthy discussion of each challenged juror. It was on this record that the trial judge entered an opinion and order detailing his consideration of the issue and his finding of no discrimination.
The most salient point that came out of this process is that practically all of the jurors accepted by the state and those excused by the defendant were in fact related to police officers, the victims of serious crime, had strong views in favor of the death penalty, or a combination of these factors. The District Attorney explained that he had an exceptionally strong pro-prosecution venire; *1264 and his overall objective was to strike the weakest, and to strike even those who might otherwise appear strong, in order to get a prospective juror who he felt was the strongest pro-prosecution juror, Ashcraft, whom the defense had sought to strike for cause and who will be discussed below. The record seems to bear out Peters' assessment of the venire. His response in the post-trial hearing detailed not only the reasons for the exercise of peremptory challenges, but reasons why the jurors not challenged, including those challenged by the defendant, were to be preferred. Based on the entirety of the explanation provided the trial judge and based upon that court's expression of careful consideration of this issue, I conclude that the trial court's determination accepting the explanations should not be disturbed.

II.
I must also note my disagreement with the suggestion that, in order to preserve an error in the failure to excuse a juror for cause, a peremptory challenge available at the time must be utilized. We have never before imposed such a condition. While it is true that we have said that one cannot complain for having to use a peremptory challenge, Mettetal v. State, 602 So.2d 864 (Miss. 1992), Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988), our only requirement for preservation of error based on the failure to grant a challenge for cause has been that all peremptory challenges be exhausted during the jury selection process. Bone v. State, 207 Miss. 20, 41 So.2d 347 (1949).[2] Here, Davis did not use all of his peremptory challenges. It follows, if we are to adhere to our established practice, that he cannot successfully claim error in the seating of Hill.
It is probably true, as the district attorney acknowledged, that the motivating factor for saving the challenge was to use it against Ashcraft. Thus, the failure to grant the challenges for cause against both Hill and Ashcraft produced a "Hobson's choice" for Davis. In my view, if it can be said that it was error not to excuse both for cause the case should be reversed, despite the fact that not all peremptory challenges were used. It has long since been recognized that in our system of justice "[t]he right to challenge a given number of jurors without showing cause is one of the most important of the rights secured to the accused." Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894). That Court's recognition of this principle continues through Ross v. Oklahoma 487 U.S. 81, 90, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80 (1988), despite the holding there that the right is statutory and does not rise to federal constitutional dimensions so as to override a state policy requiring exhaustion of peremptory challenges in order to preserve error for the failure to grant a challenge for cause. The Ross court paused to note that there was no claim that the trial court deliberately and repeatedly misapplied the law in order to force the use of peremptory challenges. There is no claim of systematic disparate treatment in the consideration of challenges for cause here.[3]
*1265 Juror Hill had a sister who was killed during the course of a burglary. The sister was quite a bit older than the juror but had twice saved the juror's life when she was a young child. Consequently, in the juror's words, she felt closer to the deceased sister than she did to her other sisters. The killer was given the death penalty but that penalty had not yet been imposed at the time of this trial, some ten years after the event. Juror Hill had negative feelings about the delay, expressing the view that once death was determined by the jury it should be inflicted with dispatch. While her feelings are certainly understandable, it is difficult to imagine that such a person could serve as a juror in a case with not too dissimilar facts and not be affected, at least subconsciously by such a tragedy. Most jurors will try to be fair. Thoughtful individuals are perfectly capable, intellectually, of separating an emotional personal tragedy from the similar situation spread before them during the course of a trial. Not all individuals are equally as thoughtful and even the most thoughtful sometimes fail to live up to their capabilities. A capital murder trial, where the jury is the sole arbiter of life or death, is not the time to take the risk of such failure. Mrs. Hill, in my view, should have been stricken for cause, despite her assurances, apparently sincere, that she believed that she could judge this matter on its merits, unaffected by what had happened to her sister.
The case of juror Ashcraft is less clear. As even the prosecutor noted, he was "almost reverse-Witherspoon." At bottom, however, he was a strong proponent of the death penalty, perhaps stronger than Hill, who would consider but not likely accept mitigating arguments other than the prospect of a sentence of life without parole. He was not one who acknowledged that for him the death penalty would be automatic. Our jurisprudence prohibits neither strong death penalty adherents nor those with conscientious scruples against the infliction of that penalty as long as the prospective juror can assure the court that despite any predilections the lawful factors will be fairly considered and the law followed such that the decision whether to decree life or death will not be automatic. The trial court's determination not to grant a challenge for cause in these circumstances may be given deference.
Only because Davis was not clearly entitled to a challenge for cause against Ashcraft, does it follow, in my view, that his failure to exercise his remaining peremptory against Hill precludes a claim of error based upon the failure to excuse Hill for cause.

III.
Davis raises the issue of prosecutorial references to Bobby Joe Biggert's status as a police officer as a violation of our statutory death penalty scheme. He asserts that the state argued a non-statutory aggravating factor. This is a different argument than that the evidence was impermissible character evidence. While the United States Supreme Court may have put to rest the notion that evidence of a victim's character is so irrelevant to the sentencing question as to render its admission violative of the Eighth and Fourteenth Amendments to the United States Constitution, Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1993), the question whether our sentencing statute permits such evidence is for this Court to decide. Irving v. State, 618 So.2d 58 (Miss. 1992); Pinkney v. State, 602 So.2d 1177, 1178 (Miss. 1992); Jones v. State, 602 So.2d 1170, 1173 (Miss. 1992); Shell v. State, 595 So.2d 1323, 1324 (Miss. 1992); Clemons v. State, 593 So.2d 1004, 1006 (Miss. 1992). This Court has decided that evidence extraneous to the statutory aggravating and any mitigating factors should not be permitted. Jenkins v. State, 607 So.2d 1171 (Miss. 1992); Wiley v. State, 635 So.2d 802 (Miss. 1993); Willie v. State, 585 So.2d 660 (Miss. 1991).
The question of whether Bobby Joe Biggert's occupation as a police officer should be allowed before the jury was the subject of what was apparently an oral motion prior to the first trial of this matter which ended in mistrial. Prior to the second trial, that motion was renewed. The court declined to revisit the issue, stating that nothing had changed. Thus, the record here does not clearly reflect the trial court's reasoning in allowing this evidence and the subsequent argument.
*1266 Bobby Joe Biggert's wallet lay folded on the floor where he was found after having been shot. His right hand clutched money in his pocket. The wallet when opened showed his policeman's badge. Biggert was entering a store. He could have been preparing to pay for merchandise, explaining these findings. Whether or not this is so, it would not be a strain to infer that Davis began to relieve Biggert of valuables, discovered that he was a police officer, panicked and shot him. The store clerk was not shot. She heard no struggle between the two nor did she hear words exchanged other than Biggert asking what was going on and Davis ordering him "over here." What is the explanation for why Biggert was shot and the clerk not shot?
One of the aggravating circumstances suggested for the jury's consideration in this case is that Davis committed the murder during "flight after committing the crime of armed robbery." The presence of the wallet suggesting that Davis had an opportunity to learn that Biggert was a police officer, and the absence of any other explanation for the decision to shoot Biggert but not the clerk provides a basis, albeit thin, for the introduction and use of this evidence in argument concerning aggravating factors.[4]
SULLIVAN, Justice, dissenting:
During closing comments of the guilt phase of this trial, the district attorney committed reversible error when he repeatedly referred to Biggert's status as a police officer when Davis had not been indicted for knowingly killing a peace officer under Miss. Code Ann. § 97-3-19(2)(a). Accordingly, I respectfully dissent.
Davis was indicted for capital murder under Miss. Code Ann. § 97-3-19(2)(e) for committing murder during the commission of a robbery. In order for a jury to convict Davis of capital murder for killing a peace officer under § 97-3-19(2)(a), the state would first be required to indict him for that offense, and would then have to prove beyond a reasonable doubt that Davis knew Biggert was a police officer when he shot him. Wheeler v. State, 536 So.2d 1341 (Miss. 1988).
District Attorney Ed Peters obviously determined that there was insufficient evidence to indict and convict Davis under § 97-3-19(2)(a), as Davis was not charged with that offense in the indictment. This was a reasonable conclusion by Mr. Peters. The evidence in this case relating to whether the defendant knew his victim was a police officer was very similar to the evidence we deemed insufficient in Wheeler. Id. at 1344 (testimony that officer was wearing her badge and holstered pistol at time of shooting was insufficient to support jury verdict that defendant realized victim was a police officer).
Here, the only testimony which could have led to the conclusion that Davis knew Biggert was a police officer was from firefighter Larry Keen who responded to the scene of the Dr. Duck's robbery and shooting. Keen testified that he noticed a badge in Biggert's wallet. Just as in Wheeler, this would not have sufficed to prove beyond a reasonable doubt that Davis saw the badge and concluded before firing his weapon that Biggert was a police officer.
Nevertheless, over numerous objections raised by defense counsel, Mr. Peters repeatedly speculated during closing comments that Biggert identified himself to Davis as a police officer:
You see, what happened was natural conclusion, logical conclusion, is that Tammy panicked. She's got her head down in that vat. And this guy [Davis] is getting the money off of Bobby Joe [Biggert]. And he's got his hand in his pocket, and comes out with the money, and said, "I'm a policeman."
BY MR. KIRKSEY: Objection, Your Honor.
BY THE COURT: Overruled.
BY MR. KIRKSEY: It's far outside the evidence.

*1267 CLOSING ARGUMENT CONTINUES BY MR. PETERS:

.....
He [Davis] executed Bobby Joe Biggert because the jig was up, because a police officer now had him, and he 
BY MR. KIRKSEY:  Objection, Your Honor. There has been no testimony that he knew there was a  he was a police officer. And I move on behalf of the Defendant, Kenny L. Davis, for a mistrial, Your Honor.
BY THE COURT: Denied. Move along.
BY MR. PETERS: Thank you, Your Honor.
CLOSING ARGUMENT CONTINUES BY MR. PETERS:
Right there is why Bobby Joe is dead and Tammy Slaton is alive. Because that [badge] was right there at the left side of Bobby Joe where he found it, along with his money in his right hand. You draw your natural conclusion.
.....
He [Davis] had all that time to decide what he was going to do. And he shot him. Senseless, cold-blooded murder. Shot him. Because he didn't want to be arrested by Bobby Joe. And that's what capital murder is.

Had he not even stolen the car, had we indicted him as killing a police officer 
BY MR. KIRKSEY:  Objection, Your Honor. This is far outside the evidence. He's now talking about a separate entire crime and a different indictment that's not even involved in this case, Your Honor. And we'd move again for a mistrial.
BY THE COURT: Denied.
BY MR. PETERS: Thank you.
CLOSING ARGUMENT CONTINUES BY MR. PETERS:
.....
We didn't even have to prove that he was a police officer. But, nonetheless, I'm sure that you know that we did. So don't get confused with that.
(T. 1819-22) (Emphasis added).
The majority correctly points out that the test to determine whether improper argument by a prosecutor to the jury requires reversal "is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." Davis v. State, 530 So.2d 694, 701 (Miss. 1988) (citing Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956)). I believe, however, that the majority has incorrectly applied the test in this case.
The majority cites Ormond v. State, 599 So.2d 951 (Miss. 1992). However, the comments at issue in Ormond, while clearly inflammatory, were not of the same unacceptable, highly prejudicial nature as the comments made by Mr. Peters in this case. In Ormond, a capital rape case, the prosecutor argued to the jury that the defendant rapist had taken away the eight-year old victim's virginity. Apparently, there was no evidence adduced at trial that the victim was a virgin prior to the rape. We concluded that the issue did not require reversal because the jury was admonished that the comments made by the lawyers were only argument and not evidence, and further because there was also a general jury instruction given prior to closing comments to that same effect. Id. at 961.
The comments in Ormond were inflammatory, but there is no statute providing for a conviction of capital rape based on evidence that the victim was a virgin at the time of the rape. As I have already pointed out, we have a separate capital murder statute under which Davis was not indicted  knowingly murdering a peace officer. Not only did Mr. Peters repeatedly go outside the evidence presented in this case by arguing that Davis knew Biggert was a police officer when he shot him, but he explained to the jury that Davis could be found guilty of capital murder on that basis.
The arguments Mr. Peters made during closing comments of the guilt phase of this trial were not merely inflammatory. It is my *1268 firm belief that his statement to the jury that Davis "didn't want to be arrested by Bobby Joe," followed by the explanation, "that's what capital murder is," created an unjust prejudice that very likely influenced the jury's decision. Even considering the wide latitude normally accorded lawyers during closing comments, Mr. Peters went too far. Cabello v. State, 471 So.2d 332, 346 (Miss. 1985) (specifically in death penalty cases there are limits to wide latitude during argument  lawyers restricted from arguing facts not in evidence); see also Ivy v. State, 589 So.2d 1263, 1266 (Miss. 1991).
The jury was not admonished when defense counsel objected to Mr. Peter's comments. Although there was a general instruction given prior to closing comments, that was not enough in this case. The jury was undoubtedly given a separate, sufficient basis upon which to convict Davis of capital murder for which he was never indicted and which lacked evidentiary support. I cannot join the majority's conclusion that the prosecutorial misconduct in this case does not warrant reversal. I respectfully dissent.
HAWKINS, C.J., joins this opinion.
NOTES
[1] Dr. Ducks pawnshop bought and sold firewood during the winter and Biggert had stopped by to purchase firewood for his home.
[2] After Davis had tied Slaton's wrist, he ordered her to get into an empty minnow vat located in the back room. Slaton complied and was in this vat when Davis shot Biggert.
[3] Forest Wood Estates is located in Hinds County, off of Siwell Road and is south of Dr. Duck's pawnshop.
[4] Jewel McLaurin was Billy Hudson's next-door neighbor. Linda Sikes had, before the trial, told the police that she had seen her brother, Kenneth Leon Davis, in McLaurin and Hudson's neighborhood on the day of the burglary carrying a duffel bag.
[5] Powers was handed down by the United States Supreme Court after Davis' case was tried.
[6] District Attorney Ed Peters stated that he "totally misunderstood what this venire member [Campbell] said." Peters said that he was having problems with his hearing aid during voir dire and that he simply made a mistake in striking Campbell. An examination of the record made during voir dire would tend to support this contention. Peters frequently asked venire members to speak up and appeared to misunderstand some responses made by venire members.
[1] The United States District Court related District Attorney Peters' testimony as follows: "he has a philosophy that on the average Blacks and (sic) less law enforcement oriented than Whites. He finds this is caused by low socio-economic conditions of blacks in this area as well as a historical oppression... . Peters testified that all other factors being equal, if he has to choose between a black venireman and a white venireman and there is no specific reason to exclude either, he excludes the Black." 682 F. Supp. at 1379-80. Peters had been previously quoted in a newspaper interview to the effect that his philosophy regarding blacks on a jury panel was to "get rid of as many as" as he can, and that his ideal juror was a "45 year old white male with a crewcut and white socks who welds for a living." Id. at 1376. These quotes appeared before the decision in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), but well after Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Batson provided a procedural mechanism to deal with the evil recognized but kept beyond practical reach in Swain, invidious racial discrimination in the jury selection process. See United States v. Pearson, 448 F.2d 1207 (5th Cir.1971), for an example of an attempt to make a case under Swain.
[2] The Bone court relied upon a previous decision dealing with the failure to grant a change of venue rather than the failure to allow a challenge for cause. Shubert v. State, 66 Miss. 446, 6 So. 238 (1889); Cummins v. State, 144 Miss. 634, 110 So. 206 (1926); Richardson v. State, 153 Miss. 654, 121 So. 284 (1929). The apparent reasoning in those cases was that the failure of the defendant to exercise all of the allotted peremptory challenges was evidence that an impartial jury was obtained in the original county. Bone application of the principle to peremptory instructions as been followed by this court with respect to both civil and criminal cases. See Chapman v. Carlson, 240 So.2d 263 (Miss. 1970), and cases cited therein.
[3] While the record reflects that the state was granted thirteen of the eighteen challenges it lodged as opposed to only three of twenty-four requested by the defense, ten of those stricken at the request of the state would not consider the death penalty under any circumstances, another was no longer a resident of the county, one convinced the court that job considerations had arisen which would not allow her to concentrate and, the last, the only one challenged in this appeal, was excused for the dual reasons that she appeared to be automatically in favor of life without parole over the death penalty, if indeed she could personally vote for the death penalty under any circumstances, and that she had a four month old child at home with a bronchial condition. There is no disparate treatment readily apparent in this record.
[4] The prosecutor's argument during the guilt phase that Davis could have been indicted for killing a police officer should not have been allowed. In light of the overwhelming evidence of guilt, however, the argument can be deemed harmless. Moreover, as it relates to guilt, that issue is not raised here by Davis.